NO. 4-08-0909          Filed 12/8/09

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| KRISTEN KAUFMANN, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Jersey County |
| JERSEY COMMUNITY HOSPITAL, a Municipal | ) | No. 07L37 |
| Corporation, | ) | |
|     Defendant-Appellee, | ) | |
|     and | ) | Honorable |
| ROGER A. SCHROEDER, M.D., | ) | Lois A. Bell, |
|     Defendant. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In July 2008, the trial court dismissed counts IV through X of plaintiff Kristen Kaufmann's first amended complaint because plaintiff failed to comply with the applicable one-year statute of limitations under section 8-101(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8-101(a) (West 2006)). Those seven counts were directed at defendant Jersey Community Hospital (Jersey Hospital). Plaintiff filed motions to reconsider in August 2008 and November 2008, which the court denied. In November 2008, the court entered an order pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), finding no just reason to delay the appeal of its decision to dismiss those seven counts. Plaintiff appeals, arguing the two-year statute of limitations under section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)) should have applied. We affirm.

## I. BACKGROUND

In December 2007, plaintiff filed a two-count complaint against Roger A. Schroeder, M.D., and Jersey Hospital. In June 2008, plaintiff filed her first amended complaint in this case. Plaintiff alleged the following. Schroeder had been her obstetrician-gynecologist since 2004. In January 2006, plaintiff was hospitalized at Jersey Hospital with a urinary tract infection. While there, Schroeder sedated her during an unnecessary exam that did not require sedation. While plaintiff was sedated, Schroeder committed a "deviant act of sex" upon plaintiff. While the information was not contained in the record, plaintiff's counsel stated during oral argument that plaintiff found Schroeder licking her breast when she awoke from her sedation. Defense counsel did not object to this information being disclosed.

Based on information and belief, plaintiff alleged no other physicians, nurses, or other hospital agents or employees were present when this occurred. In addition, based on information and belief, plaintiff alleged Schroeder had committed "devious acts of sex" upon former patients and that Jersey Hospital had knowledge of this.

Plaintiff alleged the Illinois State Police (ISP), which was investigating Schroeder's alleged criminal activity, requested her not to file a civil suit against Schroeder and Jersey Hospital until certain evidence had been collected. Plaintiff alleged she complied with ISP's request and waited to

consult a lawyer or file a civil suit against Schroeder or Jersey Hospital. She filed her civil suit in December 2007.

Counts I through III of the amended complaint were directed at Schroeder, alleging, respectively, battery, intentional infliction of emotional distress, and negligence. Counts IV through X were directed at Jersey Hospital, alleging, respectively, negligent hiring, negligent retention, negligent supervision, negligence (willful and wanton), intentional infliction of emotional distress, negligent infliction of emotional distress, and vicarious liability. Plaintiff did not allege any specific physical injuries. In the count alleging battery, plaintiff alleges Schroeder's devious acts of sex were "harmful and offensive contact." However, she does not allege Schroeder's devious act of sex caused any actual physical injury. She did allege she suffered severe and extreme emotional distress.

In July 2008, the hospital filed a motion to dismiss plaintiff's first amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2006)). That same month, the trial court dismissed counts IV through X. Plaintiff filed two motions to reconsider, which were both denied.

This appeal followed.

## II. ANALYSIS

On appeal, plaintiff argues the trial court erred in failing to find the applicable statute of limitations was two years pursuant to section 8-101(b) of the Tort Immunity Act (745

- 3 -

ILCS 10/8-101(b) (West 2006)) instead of one year pursuant to section 8-101(a) of the Tort Immunity Act (745 ILCS 10/8-101(a) (West 2006)) because plaintiff's injuries arose out of patient care. In the alternative, plaintiff argues if this court finds the one-year period to be applicable, the statute of limitations should have been equitably tolled because she was requested by ISP not to file a civil claim until it had finished gathering evidence.

A. Statute of Limitations

Section 8-101 of the Tort Immunity Act (745 ILCS 10/8-101 (West 2006)) states:

"(a) No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.

(b) No action for damages for <u>injury</u> or death against any local public entity or public employee, whether based upon tort, or breach of contract, or otherwise, <u>arising out of patient care</u> shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice

- 4 -

in writing of the existence of the injury or death for which damages are sought in the action, whichever of those dates occurs first, but in no event shall such an action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death."  (Emphases added.)

Our decision in this case rests on whether the General Assembly meant for injuries arising from a deviant sex act committed by a doctor at a hospital to be injuries "arising out of patient care" pursuant to section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)).  The legislature's intent is best determined from the plain language of the statute.  Orlak v. Loyola University Health System, 228 Ill. 2d 1, 8, 885 N.E.2d 999, 1004 (2007).  When a term is not defined by a statute, it is to be given its plain and ordinary meaning.  Orlak, 228 Ill. 2d at 8, 885 N.E.2d at 1004.  Neither section 8-101 of the Tort Immunity Act (745 ILCS 10/8-101 (West 2006)) nor section 13-212 of the Code of Civil Procedure (Code) (735 ILCS 5/13-212 (West 2006)), which also contains the same language, defines the phrase "arising out of patient care."  In determining the plain meaning of a statute's terms, we consider the statute in its entirety, keeping in mind the subject it addresses, and the apparent intent of the legislature in enacting the statute.  Orlak, 228 Ill. 2d

at 8, 885 N.E.2d at 1004.

According to plaintiff, her injuries arose from the patient care she received at Jersey Hospital. The parties did not cite, and this court did not find, any cases specifically dealing with section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)). As a result, this is a case of first impression with regard to section 8-101(b).

Plaintiff argues we should be guided by cases interpreting section 13-212 of the Code (735 ILCS 5/13-212 (West 2006)), which concerns the statute of limitations for claims involving physicians or hospitals and includes language similar to the language of section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)). Section 13-212 of the Code states in part:

> "(a) Except as provided in [s]ection 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse[,] or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or

- 6 -

death for which damages are sought in the action, whichever of such dates occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.

(b) Except as provided in [s]ection 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse[,] or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 8 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death where the person entitled to bring the action was, at the time the cause of action accrued, under the age of 18 years ***."  (Emphases added.)  735 ILCS 5/13-212(a), (b) (West 2006).

In 2007, the Supreme Court of Illinois issued two opinions interpreting the "arising out of patient care" language found in section 13-212 of the Code (735 ILCS 5/13-212 (West

2006)).  See Brucker v. Mercola, 227 Ill. 2d 502, 886 N.E.2d 306 (2007); Orlak, 228 Ill. 2d 1, 885 N.E.2d 999.  We conclude the supreme court would apply the language of section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)) in the same manner it applied the language of section 13-212 of the Code (735 ILCS 5/13-212 (West 2006)) in Brucker and Orlak, considering the statutes contain nearly identical language.  As a result, we use the same analysis in this case as the supreme court used in Brucker and Orlak to determine whether section 8-101(a) or (b) of the Tort Immunity Act (745 ILCS 10/8-101(a), (b) (West 2006)) is applicable to plaintiff's claim.

In Brucker, Anna Brucker went to Dr. Mercola's office for an allergy consultation.  In deposition testimony, Mercola said he was "closer to a nutritionist than an internist or family practitioner."  Brucker, 227 Ill. 2d at 506, 886 N.E.2d at 308.  According to the supreme court's opinion, Dr. Mercola's "practice involved using nutrition and nutritional supplements to correct chronic diseases, and he prescribed traditional medicine only sparingly."  Brucker, 227 Ill. 2d at 506, 886 N.E.2d at 308.  Dr. Mercola sold many of the supplements that he prescribed as a service for his patients because insurance usually did not cover the cost of the supplements.  Brucker, 227 Ill. 2d at 506, 886 N.E.2d at 308.  Mercola sold them to his patients for signifi-cantly less than they could purchase the supplements at health-food stores.  Brucker, 227 Ill. 2d at 506, 886 N.E.2d at 308-09.  Initially, Mercola's office ordered L-glutamine, a supplement, in

- 8 -

prepackaged capsule form, but Dr. Mercola's office later ordered it in bulk form as a way for patients to save money.  Brucker, 227 Ill. 2d at 506, 886 N.E.2d at 309.  According to the opinion:

> "At the relevant time, Barbara Pierce, a receptionist with no medical training, was in charge of measuring and bottling the bulk supplements into individual bottles.  However, Dr. Mercola testified in his deposition that he took ultimate responsibility for ensuring that the supplement bottles were filled correctly.  Dr. Mercola further explained in his deposition that, although he would sell the supplements to a member of the general public who requested them, he was not a general retailer of supplements."  Brucker, 227 Ill. 2d at 506, 886 N.E.2d at 309.

In fact, Mercola testified in a deposition that 99.5% of his supplement sales were to his own patients.  Brucker, 227 Ill. 2d at 506-07, 886 N.E.2d at 309.

Mercola diagnosed Anna Brucker as suffering from a toxic reaction to an overgrowth of candida in her body.  Brucker, 227 Ill. 2d at 507, 886 N.E.2d at 309.  He prescribed her L-glutamine, an amino acid, to help repair her colon and intestinal lining.  Brucker, 227 Ill. 2d at 507, 886 N.E.2d at 309.

> "At the time of the diagnosis, his office was out of stock of that particular supplement.

He did not, however, advise Anna to purchase it elsewhere.  Instead, he sold her what was supposed to be L-glutamine at her next office visit on May 25, 1995.  In the meantime, Pierce had accidentally filled some of the L-glutamine bottles with selenium because an unmarked package of selenium had been left in the storage closet where the bulk L-glutamine was typically stored."  Brucker, 227 Ill. 2d at 507, 886 N.E.2d at 309.

Anna purchased one of these bottles and became violently ill after taking the supplement.  Brucker, 227 Ill. 2d at 507, 886 N.E.2d at 309.  By following the directions for the L-glutamine, Anna took a dosage of selenium over 20,000 times the safe dosage level for that substance.  Brucker, 227 Ill. 2d at 507, 886 N.E.2d at 309.

In count I of the Bruckers' amended complaint, Anna sought damages for her own injuries.  In count II, John Brucker sought damages for loss of consortium.  Count III was brought on behalf of Robert Grant Brucker, a minor, with whom Anna was pregnant when she ingested the selenium.  Brucker, 227 Ill. 2d at 505, 886 N.E.2d at 308.  Count III alleged Robert had been poisoned in utero when his mother ingested the selenium powder.  Brucker, 227 Ill. 2d at 507, 886 N.E.2d at 309.

The defendants moved to dismiss count III as barred by the applicable statute of repose found in section 13-212(b) of

the Code (735 ILCS 5/13-212(b) (West 2006)).  Brucker, 227 Ill. 2d at 508, 886 N.E.2d at 310.  In granting the motion to dismiss, the trial court:

> "explained that the phrase 'arising out of patient care' had been construed broadly and that plaintiffs' claim on behalf of Robert alleged an injury arising out of patient care.  Further, the court determined that the repose period of section 13-212(b) had not been tolled."  Brucker, 227 Ill. 2d at 511, 886 N.E.2d at 311.

Plaintiffs filed a second amended complaint specifically alleging Robert's legal disability at the time of Anna's poisoning.  Brucker, 227 Ill. 2d at 511, 886 N.E.2d at 311-12.  Defendants again moved to dismiss count III, and the trial court again dismissed the count on the same grounds.  Brucker, 227 Ill. 2d at 511-12, 886 N.E.2d at 312.  The First District Appellate Court affirmed the trial court.  Brucker, 227 Ill. 2d at 512, 886 N.E.2d at 312.  Our supreme court then allowed plaintiff's petition for leave to appeal.  Brucker, 227 Ill. 2d at 513, 886 N.E.2d at 312.

In its decision in Brucker, our supreme court made clear certain points in interpreting the applicability of section 13-212(b) of the Code (735 ILCS 5/13-212(b) (West 2006)).  First, the court noted "the relevant question in determining whether section 13-212 provides the applicable limitations period is not

whether the complaint alleges medical malpractice, but whether the complaint alleges an <u>injury</u> arising out of patient care." (Emphasis added.) <u>Brucker</u>, 227 Ill. 2d at 516, 886 N.E.2d at 314.

Second, the supreme court construed the language "arising out of patient care" as simply "requiring a causal connection between the patient's medical care and the <u>injury</u>." (Emphasis added.) <u>Brucker</u>, 227 Ill. 2d at 523, 886 N.E.2d at 318. According to the court, the language "clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment." <u>Brucker</u>, 227 Ill. 2d at 523-24, 886 N.E.2d at 318-19.

Third, the supreme court noted the term "patient care" encompasses "the entire scope of a person's medical care and treatment." <u>Brucker</u>, 227 Ill. 2d at 524, 886 N.E.2d at 319.

Fourth, the supreme court explicitly rejected a "but for" causation analysis. <u>Brucker</u>, 227 Ill. 2d at 533-34, 886 N.E.2d at 324. Thus, although the language "injuries arising from patient care" encompasses more situations than just medical malpractice, not all injuries occurring at a hospital or other treatment facility arise from patient care. According to the court:

> "When the only connection between the treat-
> ment and the injury is that the patient would
> not have been at a place where an injury oc-
> curred but for his treatment or that the

- 12 -

treatment placed the plaintiff in a position where he was injured by a neutral force, the injury does not arise out of patient care." Brucker, 227 Ill. 2d at 534, 886 N.E.2d at 324.

Based on the allegations in plaintiff's complaint, the supreme court concluded:

"Here, there is no question that plaintiffs' complaint alleged an injury arising out of patient care.  The complaint alleged that Anna was Dr. Mercola's patient and that Dr. Mercola prescribed L-glutamine for Anna but dispensed selenium to her instead.  The complaint further alleged that Anna and her fetus, Robert, were poisoned when she ingested the selenium.  Anna's and Robert's injuries were caused by the care and treatment provided to Anna by defendants.  Moreover, it would be preposterous to argue that this was simply a case of 'but for' causation.  Anna was not injured by some neutral force that had nothing to do with the care and treatment defendants provided to her.  Rather, her injury was caused because she ingested the substance in the bottle that Dr. Mercola sold to her to treat a medical condi-

- 13 -

tion that Dr. Mercola had diagnosed." Bruck-
er, 227 Ill. 2d at 524-25, 886 N.E.2d at 319.

In Brucker, the injury arose from her patient care. Dr. Mercola prescribed L-glutamine but mistakenly sold her a bottle marked L-glutamine that contained selenium. Dr. Mercola's act of prescribing the L-glutamine and selling what he thought was L-glutamine to Anna Brucker was part of Anna Brucker's patient care. Brucker, 227 Ill. 2d at 524, 886 N.E.2d at 319. As a result, the alleged injury arose from patient care.

In deciding Brucker, the supreme court examined other cases interpreting the "arising out of patient care" language found in section 13-212 of the Code (735 ILCS 5/13-212 (West 2006)). Brucker, 227 Ill. 2d at 518-23, 886 N.E.2d at 315-18, examining Miller v. Tobin, 186 Ill. App. 3d 175, 542 N.E.2d 173 (1989); Walsh v. Barry-Harlem Corp., 272 Ill. App. 3d 418, 649 N.E.2d 614 (1995); Stiffler v. Lutheran Hospital, 965 F.2d 137 (7th Cir. 1992); and Cammon v. West Suburban Hospital Medical Center, 301 Ill. App. 3d 939, 704 N.E.2d 731 (1998).

In the instant case, plaintiff relies on some of the cases discussed in Brucker. See Miller, 186 Ill. App. 3d 175, 542 N.E.2d 173; Walsh, 272 Ill. App. 3d 418, 649 N.E.2d 614; Stiffler, 965 F.2d 137. Plaintiff also relies on our supreme court's decision in Orlak, 228 Ill. 2d 1, 885 N.E.2d 999. However, in each of those cases, the alleged injuries upon which the claims were based resulted from or were caused by patient care or

- 14 -

things incidental to patient care.

In Orlak, the plaintiff contracted hepatitis through a blood transfusion. Orlak, 228 Ill. 2d at 4-5, 885 N.E.2d at 1001-02. Plaintiff sued the hospital for failing to notify her of the need to be tested for hepatitis, which lulled her into the false sense of security that the blood she received via the transfusion was free of disease. Orlak, 228 Ill. 2d at 5-6, 885 N.E.2d at 1002. The court held since plaintiff's injury, upon which her claim was based, arose from the patient care and treatment she received, i.e., the blood transfusion, her cause of action was barred by the statute of repose found in section 13-212 of the Code (735 ILCS 5/13-212 (West 2006)). Orlak, 228 Ill. 2d at 16-17, 885 N.E.2d at 1008.

In Miller, the plaintiff alleged "that while he and his wife were receiving marital counseling from defendant, defendant revealed confidential information to plaintiff's wife that plaintiff had specifically asked defendant not to reveal." Miller, 186 Ill. App. 3d at 176, 542 N.E.2d at 173. The plaintiff argued he was injured by the defendant's breach of an implied contract. Miller, 186 Ill. App. 3d at 176, 542 N.E.2d at 173. The appellate court found the plaintiff's claim was barred by the statute of limitations found in section 13-212 of the Code (735 ILCS 5/13-212 (West 2006)) because his injury arose out of his and his wife's joint treatment. Miller, 186 Ill. App. 3d at 178, 542 N.E.2d at 174-75.

In Walsh, the plaintiff filed his first complaint in

- 15 -

September 1992, alleging medical malpractice against the defendants and another physician, Dr. Robert Levy. Walsh, 272 Ill. App. 3d at 420, 649 N.E.2d at 615. "The plaintiff alleged that, as a result of the defendants' and Levy's acts or omissions, he suffered the loss of the lens of his right eye, damage requiring additional surgery and impairment of the vision in his right eye." Walsh, 272 Ill. App. 3d at 420, 649 N.E.2d at 615. In April 1993, the trial court dismissed the plaintiff's first complaint with prejudice. Walsh, 272 Ill. App. 3d at 420, 649 N.E.2d at 615. In September 1993, the plaintiff filed another complaint, alleging the defendants violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121 1/2, par. 261 et seq.). Walsh, 272 Ill. App. 3d at 421, 649 N.E.2d at 615. The trial court also dismissed the September 1993 complaint with prejudice, finding the statute of limitations found in section 13-212 of the Code barred the plaintiff's action. Walsh, 272 Ill. App. 3d at 421-22, 649 N.E.2d at 616.

The plaintiff argued on appeal that his September 1993 complaint did not contain any allegations of "'injury or death *** arising out of patient care.'" Walsh, 272 Ill. App. 3d at 422, 649 N.E.2d at 616. Instead, the plaintiff asserted "that his allegations that the defendant intentionally misrepresented test results and the need for surgery are allegations of fraud that relate only to the commercial aspects of the eye-care business." Walsh, 272 Ill. App. 3d at 422, 649 N.E.2d at 616.

In ruling against the plaintiff, the First District

- 16 -

Appellate Court stated:

"[W]e believe the allegations of the
plaintiff's September 1993 complaint stated a
cause of action against a physician for an
'injury *** arising out of patient care.'
The plaintiff's complaint did contain allega-
tions that he was injured by the defendants'
acts:  he incurred medical expenses for the
unnecessary surgery; he incurred additional
medical expenses to determine what was 'wrong
with his eyes following [the surgery]'; and
he suffered 'great mental distress and suf-
fering.'

The plaintiff argues that, because he
alleged no physical injury, the medical mal-
practice statute of limitations did not ap-
ply.  We believe that the plaintiff's com-
plaint could be interpreted as alleging phys-
ical injury, but even if we were to conclude
that there was no allegation of physical in-
jury, this would not remove the plaintiff's
complaint from section 13-212.  It is a well-
established principle of statutory construc-
tion that when a statute is 'clear and unam-
biguous a court is not at liberty to depart
from the plain language and meaning of the

- 17 -

statute by reading into it exceptions, limitations[,] or conditions that the legislature did not express.' [Citation.] Contrary to the plaintiff's argument, there is no requirement in the plain language of section 13-212 that a plaintiff allege a <u>physical</u> injury, and we refuse to infer such a limitation.

We also believe that the plaintiff's alleged injury arose out of patient care. The plaintiff asserted in his September 1993 complaint that he went to the defendants seeking advice regarding his eye condition. The defendants then advised him to undergo surgery, which they knew was unnecessary, and, in fact, performed unnecessary surgery on his eye." (Emphases in original.) <u>Walsh</u>, 272 Ill. App. 3d at 423, 649 N.E.2d at 616-17.

According to the court, "plaintiff's allegations of misconduct were inextricable from the defendants' diagnosis and treatment of his eyes." <u>Walsh</u>, 272 Ill. App. 3d at 425, 649 N.E.2d at 618.

In <u>Stiffler</u>, the plaintiff brought a products-liability suit against the defendant, Lutheran Hospital, alleging a prosthesis that had been medically implanted in her chest cavity during a hernia operation was defective. <u>Stiffler</u>, 965 F.2d at

- 18 -

138. "[T]he prosthesis had broken away from its placement and became tangled in her intestines, thereby causing her extreme discomfort." Stiffler, 965 F.2d at 138. The trial court found the plaintiff's claim was barred by the statute of repose found in section 13-212 of the Code. Stiffler, 965 F.2d at 139. The Seventh Circuit Court of Appeals agreed. According to the Seventh Circuit:

> "[The plaintiff argues] her injury did not in fact arise 'out of patient care,' and therefore [section] 13-212 cannot act as a bar to her suit against the Hospital. To support this proposition, she argues that her injury resulted not from the Hospital's medical care, but rather from the Hospital's negligent choice and distribution of a defective prosthetic device. That negligent act, she maintains, was unrelated to her medical treatment. We disagree.
>
> The fatal flaw in this argument is that the distinction between medical care and the distribution of medical materials is not as clearly delineated as Stiffler would have us believe. Quite the contrary, medical materials are so inextricably linked with every step of today's treatment processes that their use almost per se arises 'out of pa-

tient care.'"  Stiffler, 965 F.2d at 140.
It is clear the plaintiff's injury in Stiffler was incidental to
her surgery, which was part of her patient care.

Unlike the alleged injuries in Brucker and the other
cases cited by plaintiff, plaintiff's injuries were caused by the
alleged deviant sexual act of her physician.  The parties did not
cite, and we did not find, any Illinois cases dealing with wheth-
er injuries resulting from a nonconsensual deviant sexual act
committed at a hospital by a patient's doctor "arise from patient
care."  However, in Doe v. Cherwitz, 894 F. Supp. 344 (S.D. Iowa
1995), the plaintiff claimed the defendant physician, while
performing a physical examination on her in 1973, "forcibly had
sexual intercourse with her against her will."  Cherwitz, 894 F.
Supp. at 345.  The federal court in Cherwitz was faced with
interpreting an Iowa statute of limitations that provided actions
"for injuries to the person or wrongful death against any physi-
cian *** arising out of patient care" shall be brought "within
two years."  Iowa Code Ann. §614.9.

Defendants Cherwitz and the Davenport Clinic argued
this statute of limitations barred plaintiff's claims.  The
plaintiff argued her claims did not arise out of patient care and
thus the two-year statute of limitations (and six-year statute of
repose) did not apply to her claim.  The court stated:

> "I do not believe the Iowa Supreme Court ***
> would hold if this case were presented to it,
> that section 614.1(9) applies to willful non-

- 20 -

treatment tortious activity by the physician, simply because it occurred when the patient was seeing the physician for medical reasons. Obviously, that is not what the legislature intended in enacting the statute, and its careful choice of language--'arising from patient care'--clearly limits the protection of the statute to claims resulting from patient[-]care activity.  Rape is not patient[-]care activity."  (Emphasis in original.)  Cherwitz, 894 F. Supp. at 345-46.

Likewise, in Burke v. Snyder, 899 So. 2d 336, 337 (Fla. App. 2005), the plaintiff sought damages against a doctor and the treatment center where he worked, alleging the doctor committed a sexual battery on her during a medical examination.  The trial court dismissed the complaint, finding Florida's medical-malpractice statute applied to a claim against a health-care facility and physician accused of sexual misconduct during a patient examination.  Burke, 899 So. 2d at 337.  The appellate court in Burke reversed the trial court, holding "that a claim of sexual misconduct by a doctor during a medical examination or procedure is not a claim 'arising out of the rendering of ... medical care or services.'  [Citation.]"  Burke, 899 So. 2d at 340.

However, while Cherwitz and Burke are persuasive, we are bound by our supreme court's decisions in Brucker and Mercola.  In reading those two decisions, we conclude reasonable minds

could differ on whether section 8-101(a) or (b) (745 ILCS 10/8-101(a), (b) (West 2006)) should apply to the case sub judice. This is evidenced by the vigorous dissent in this case.

Our supreme court has interpreted the phrase "arising out of patient care" broadly. Even though the court has rejected "but for" causation, the court stated the following in making that determination:

> "When the only connection between the treatment and the injury is that the patient would not have been at a place where an injury occurred but for his treatment or that the treatment placed the plaintiff in a position where he was injured by a neutral force, the injury does not arise out of patient care." Brucker, 227 Ill. 2d at 534, 886 N.E.2d at 324.

According to the allegations in this case, it is quite clear (1) plaintiff was injured by her doctor's actions while she was at the hospital and (2) her doctor was definitely not a neutral force.

However, we conclude neither our supreme court nor the General Assembly intended for our analysis to end with a determination that Schroeder was not a neutral force. Instead, we must ask from what actions did plaintiff's alleged injury arise. In this case, plaintiff's alleged injuries arose from Schroeder's act of licking her breast. The question then becomes whether

Schroeder's act of licking plaintiff's breast was patient care. We conclude it was not.

We can think of absolutely no medical reason why the doctor needed or could have thought he needed to lick plaintiff's breast as part of her general patient care while she was a patient at Jersey Hospital, being treated for a urinary tract infection. The only reason for Schroeder to lick plaintiff's breast was for his own sexual gratification. This act was of no arguable benefit to plaintiff's health nor her patient care.

Schroeder's conduct was clearly separate and played no part in the patient care plaintiff was receiving at Jersey Hospital. To find Schroeder's actions constituted patient care, we would have to believe the General Assembly intended that anything a physician does to a patient constitutes patient care. We conclude the General Assembly did not have this intent.

The dissent states "[w]hen a doctor assaults a patient during an examination, or uses patient care as a pretext for sexual misconduct, the exact cause of the patient's injuries is difficult to assess." Slip op. at 33. We disagree. The exact cause of the patient's injuries is usually clear, i.e., the alleged act constituting the assault, which in this case was Schroeder licking plaintiff's breast.

Plaintiff's injuries arose from Schroeder's act of sexual gratification, which was clearly separate from her patient care. Plaintiff's hospitalization and treatment related to a urinary tract infection. Plaintiff cites no relation between the

- 23 -

injuries she suffered (battery and extreme emotional distress) and her care and treatment for a urinary tract infection. Plaintiff's injuries, on which her claim is based, did not arise from her patient care.  As a result, the legal theory under which plaintiff pursued her claim against Jersey Hospital is irrelevant.

For plaintiff's claims against Jersey Hospital to come within the limitations period of section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)), plaintiff's injury must have arisen out of patient care regardless of the legal theory plaintiff used to pursue her claim.  Schroeder's alleged act of licking plaintiff's breast was clearly unrelated to her patient care.  Although her injuries were allegedly inflicted by a physician in a hospital, her injuries did not result from her patient care, were completely unrelated to her patient care, and were not incidental to her patient care.  Without an injury arising out of patient care, all of plaintiff's claims against Jersey Hospital are untimely pursuant to the one-year statute of limitations found in section 8-101(a) of the Tort Immunity Act (745 ILCS 10/8-101(a) (West 2006)).

The dissent argues we should look to decisions in workers' compensation cases to determine whether the alleged sexual assault in this case arose from patient care.  However, even in workers' compensation cases, "sexual assaults that are the result of motives personal to the assailant and unrelated to the employment do not arise out of the employment and are not

- 24 -

compensable."  82 Am. Jur. 2d Workers' Compensation §347, 324-25 (2003).  Even if we applied the same reasoning found in workers' compensation cases, Schroeder's motives in allegedly licking plaintiff's breast could not have been related to her patient care.

For the sake of clarity, we are not holding Jersey Hospital is immune from liability simply because it is a public entity.  We are only holding plaintiff's claims against Jersey Hospital are barred by the one-year statute of limitations found in section 8-101(a) of the Tort Immunity Act (745 ILCS 10/8-101(a) (West 2006)).

## B. Equitable Tolling

In the alternative, plaintiff argues the one-year statute of limitations pursuant to section 8-101(a) should have been tolled because she was allegedly prevented from filing her lawsuit by ISP, which allegedly asked her not to file a civil suit while its criminal investigation was pending.

Equitable tolling may be appropriate if a plaintiff has been prevented from asserting her rights in some extraordinary way.  Clay v. Kuhl, 189 Ill. 2d 603, 614, 727 N.E.2d 217, 223 (2000).  "[E]quitable tolling, unlike equitable estoppel, applies even when the defendant is faultless."  Griffin v. Willoughby, 369 Ill. App. 3d 405, 416, 867 N.E.2d 1007, 1016 (2006), citing Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996).  This court has stated:

"Where the plaintiff cannot reasonably be

expected to sue in time because of disability, irremediable lack of information, or other circumstances beyond his control, the statute of limitations will be tolled until he is able through the exercise of proper diligence to file his suit." Griffin, 369 Ill. App. 3d at 416, 867 N.E.2d at 1016. Plaintiff in the case sub judice was not prevented in some extraordinary way from filing her claim within the applicable statute of limitations. She had no disability, lack of information, or any circumstance beyond her control.

While we appreciate her desire to cooperate with a pending ISP investigation, the record reflects Schroeder was indicted in May 2006. Plaintiff alleges Schroeder assaulted her in January 2006. Thus, she had more than six months to file her claim against Jersey Hospital after Schroeder was indicted. After Schroeder's indictment, plaintiff had no need to refrain from filing her claim because at that point the investigation was public knowledge. As a result, the statute of limitations cannot be tolled.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, J., concurs.

MYERSCOUGH, P.J., dissents.

- 26 -

PRESIDING JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. I would reverse the trial court's dismissal. The majority is correct that the phrase "arising out of patient care" in section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2006)) should be construed to mean the same thing as it does in section 13-212 of the Code (735 ILCS 5/13-212 (West 2006)). However, I disagree with the majority's determination that plaintiff's injuries did not arise out of the patient care she received from Dr. Schroeder at Jersey Hospital. The majority correctly asks, "Instead, we must ask from what actions did plaintiff's alleged injury arise." Slip op. at 22. The majority's answer to that question is too simplistic, "In this case, plaintiff's alleged injuries arose from Schroeder's act of licking her breast." Slip op. at 22. This is not a case of sexual assault that just happened to occur in a medical setting. Rather, this is a case of sexual assault that is inextricable from the patient's medical care.

First, the majority paints plaintiff's complaint with an overly broad brush, boiling it down to a mere intentional battery. But plaintiff does not simply allege battery in her complaint. The majority ignores the pleadings here. Plaintiff also alleges negligence against Schroeder for performing an unnecessary medical examination or procedure, administering unnecessary drugs or sedatives, failing to request others be present during her examination, failing to obtain her informed consent before the examination and administration of drugs and

- 27 -

"mismanag[ing] the transference phenomenon."

Plaintiff further alleges negligence against Jersey Hospital for hiring and retaining Schroeder despite knowledge that he was unfit for his position (counts IV and V), negligent and willful and wanton supervision (counts VI and VII), intentional and negligent infliction of emotional distress (counts VIII and IX), and vicarious liability (count X) for retaining Schroeder despite knowledge of allegations that he had committed deviant sexual acts on other former patients. Because the trial court dismissed counts IV through X on statute-of-limitations grounds, the merit of these allegations is not at issue on appeal.

Moreover, plaintiff alleges that all of these acts caused her injuries. That Schroeder allegedly committed these acts to set the stage for a deviant sexual act is irrelevant. Injuries from unnecessary treatment undertaken not to heal a patient but further a medical provider's own goals arise out of patient care because the provider's decision to render unnecessary treatment implicates his or her judgment. See Walsh, 272 Ill. App. 3d at 425, 649 N.E.2d at 618 (the plaintiff's additional medical expenses and emotional distress resulting from unnecessary eye surgery were injuries arising out of patient care because surgeons made a medical judgment that plaintiff did not need the surgery but operated anyway). Therefore, under section 13-212 of the Code, "patient care" can encompass even intentional wrongdoing, particularly in the form of unnecessary examinations

- 28 -

and procedures.  Cases interpreting section 13-212 of the Code must apply to section 8-101(b) of the Tort Immunity Act.  Plaintiff's injuries therefore arise out of her patient care at Jersey Hospital because her allegations of misconduct are inextricable from Schroeder's diagnosis and treatment of her urinary tract infection.  See Walsh, 272 Ill. App. 3d at 425, 649 N.E.2d at 618.

Second, I disagree with the majority's interpretation of "arising out of patient care."  The majority appears to adopt a test similar to the classic test for obscenity: "I know 'arising out of patient care' when I see it."  A more appropriate interpretation of "arising out of" is one which Illinois courts have long applied to the Workers' Compensation Act (820 ILCS 305/1 through 30 (West 2006)).  Essentially, this analysis seeks to determine whether employment exposes an employee to a certain risk to a greater extent than the general public.  If it does, the employee's injury arises out of her employment.  Caterpillar Tractor Co. v. Industrial Comm'n, 129 Ill. 2d 52, 58, 541 N.E.2d 665, 667 (1989).  If we adapt this test for the phrase "arising out of patient care" in section 8-101(b) of the Tort Immunity Act and section 13-212 of the Code, not only do we reach the same results in the medical-malpractice cases the majority cites, but we find that unnecessary medical procedures, unnecessary sedation, and even sexual assault may arise from patient care in appropriately limited circumstances.

## I. ALLEGATIONS IN THE COMPLAINT ALLEGE
## INJURIES ARISING OUT OF PATIENT CARE

Our supreme court has said that injuries "arising out of patient care" are those which have their origin in, or are incidental to, the entire scope of a patient's medical care and treatment. Brucker, 227 Ill. 2d at 523-24, 886 N.E.2d at 318-19. Accordingly, the phrase "arising out of patient care" should be read broadly. Orlak, 228 Ill. 2d at 13, 885 N.E.2d at 1006. The plaintiff nonetheless must show a causal connection between her patient care and her injury. Brucker, 227 Ill. 2d at 524, 886 N.E.2d at 319. However, this broad understanding does not encompass "but for" causation: "When the only connection between the treatment and the injury is that the patient would not have been at the place where an injury occurred but for his treatment or that the treatment placed the plaintiff in a position where he was injured by a neutral force, the injury does not arise out of patient care." (Emphasis added.) Brucker, 227 Ill. 2d at 534, 886 N.E.2d at 324. Importantly, the Brucker court also noted that for a plaintiff to connect an injury to patient care, there must be an allegation that the medical provider committed an error in judgment or breached a medical standard of care. Brucker, 227 Ill. 2d at 536, 886 N.E.2d at 325.

At first blush, the instant case presents a straightforward instance of "but-for" causation: But for plaintiff's patient care, Schroeder would not have had an opportunity to commit the alleged deviant sexual act. Again, however, plaintiff's complaint claims not only battery (count I) but negligence

regarding the unnecessary examination and sedation (count III).
In essence, plaintiff alleges that Schroeder made a medical
judgment when he correctly diagnosed her condition (urinary tract
infection), knew she would not benefit from certain treatment
(examination and sedation), yet proceeded with the unnecessary
treatment as a means to his own sexual gratification.  This is
analogous to Walsh, where surgeons correctly diagnosed the plain-
tiff's condition, knew he would not benefit from certain treat-
ment (surgery), yet proceeded with the unnecessary treatment as a
means to their own financial gratification.  Walsh, 272 Ill. App.
3d at 423, 649 N.E.2d at 617.  As in Walsh, plaintiff's allega-
tions of misconduct are inextricable from Schroeder's diagnosis
and treatment of her condition.  (Arguably, even the alleged
deviant sexual act itself implicates a medical judgment regarding
patient care, namely a decision to divert legitimate treatment
for a malicious sexual frolic.)

The majority rests its holding on the simplistic asser-
tion that rape is not patient care.  Because plaintiff alleges
emotional distress arising from the deviant sexual act, and
because there could have been no medically beneficial reason for
Schroeder to lick plaintiff's breasts as part of a treatment for
a urinary tract infection, the majority reasons plaintiff failed
to show a relation between her treatment and her injuries.  Slip
op. at 24.  But the alleged deviant act did not occur in a
vacuum--if it occurred, it occurred in a context of outrageously
negligent patient care.  Rape is not "patient care," but neither

is fraud: In Walsh, the doctors conferred no medical benefit upon the plaintiff by performing unnecessary surgery. However, the court rejected the plaintiff's argument that the fraudulent business aspects of the doctors' conduct (intentional misrepresentation of test results, et cetera) were somehow separable from the plaintiff's patient care. "[T]he plaintiff's allegations of misconduct were inextricable from the defendants' diagnosis and treatment of his eyes." Walsh, 272 Ill. App. 3d at 425, 649 N.E.2d at 618. The intentional wrongdoing was so bound up with the patient care that it became impossible to separate injuries arising out of the fraud from injuries arising out of the patient care. (Of note, our supreme court discussed and approved of Walsh in both Brucker and Orlak. See Brucker, 227 Ill. 2d at 519, 886 N.E.2d at 316. Orlak, 228 Ill. 2d at 13-14, 885 N.E.2d at 1006-07.) Likewise, the plaintiff in Orlak argued that the injury she suffered from the hospital's failure to advise her to be tested for a blood-borne virus was somehow separate from the injuries she suffered from the tainted blood itself. The supreme court disagreed: "[T]he omission itself cannot be viewed in a vacuum. Plaintiff's allegations of a duty to notify her and Loyola's alleged violation of that duty flows from the blood transfusion she received during her 1989 hospitalization." Orlak, 228 Ill. 2d at 16, 885 N.E.2d at 1008.

When a doctor assaults a patient during an examination, or uses patient care as a pretext for sexual misconduct, the exact cause of the patient's injuries is difficult to assess.

- 32 -

For example, a man is unnecessarily sedated for a prostate exami-
nation and sexually assaulted by his doctor. As a result of this
incident, he develops extreme emotional distress, which manifests
itself in loss of appetite and insomnia. The psychological toll
caused by the sexual assault resulting in his loss of appetite
cannot be separated from the sleepless nights flowing from the
helplessness he felt because he was unnecessarily sedated. The
injuries such a patient suffers from the violation of his bodily
integrity cannot be separated from the injuries he suffers as a
result of the unnecessary medical procedure. To attempt similar
separation in the instant case is impossible and inconsistent
with the case law.

## II. CONSTRUCTION OF "ARISING OUT OF" SHOULD PARALLEL CONSTRUCTION OF SUCH LANGUAGE IN WORKERS' COMPENSATION CASES

Section 8-101(b) of the Tort Immunity Act provides a
two-year statute of limitations for actions seeking damages for
injuries "arising out of patient care." (Emphasis added.) 745
ILCS 10/8-101(b) (West 2006). Similarly, the Workers' Compensa-
tion Act grants an employee compensation for "any injury, dis-
ablement or death arising out of and in the course of his employ-
ment." (Emphasis added.) 820 ILCS 305/1(b)(3) (West 2006). In
Brucker, the supreme court noted that "arising out of" has a set
meaning in the law and is construed most often in the context of
the Workers' Compensation Act:

> "The phrase does not encompass 'but for' cau-
> sation in the Workers' Compensation Act in
> that it is not enough merely to show that the

- 33 -

claimant would not have been at the place where the injury occurred but for his or her employment. [Citations.] It is also not sufficient to show that the accident would not have occurred but for the fact that the claimant's employment placed the claimant in a position in which he was injured by a neutral (neither personal nor related to employment) force. [Citation.]" Brucker, 227 Ill. 2d at 522-23, 886 N.E.2d at 318.

While the supreme court also noted that courts have equated "arising out of" with but-for causation in other contexts such as insurance, the court ultimately rejected that approach:

"Considering the above authorities, we construe 'arising out of patient care' simply as requiring a causal connection between the patient's medical care and the injury. While the phrase does not need to be construed so broadly as to encompass 'but for' causation, it clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment. This court has been defining 'arising out of' as referring to cause or origin since at least 1917 [citation] so we should presume that the legislature was well aware of the judicial

- 34 -

construction of this phrase when it used it

in section 13-212." <u>Brucker</u>, 227 Ill. 2d at

523-24, 886 N.E.2d at 318-19.

The supreme court noted in a footnote that there is no reason

"why we should not presume that the leg-

islature intended 'arising out of' to have

the same meaning always assigned to it.

Moreover, in the workers' compensation con-

text, this court has for years been constru-

ing the phrase to refer to cause or origin

while not encompassing 'but for' causation."

<u>Brucker</u>, 227 Ill. 2d at 524 n.4, 886 N.E.2d

at 319 n.4.

The majority summarily dismisses this analogy to the Workers'

Compensation Act with a citation to American Jurisprudence,

ignoring the cases below that clearly find injuries such as

battery and assault arise out of the employment where such are

risks distinctly associated with employment.  Just as the nurse

is more likely to be assaulted, so is the naked patient undergo-

ing unnecessary medical procedures.  See <u>Rush-Presbyterian-St.

Luke's Medical Center v. Industrial Comm'n</u>, 258 Ill. App. 3d 768,

773, 630 N.E.2d 1175, 1179 (1994) (physical and psychological

injuries a white-uniformed hospital dietary supervisor suffered

when multiply, brutally raped in the staff area of a hospital by

two intruders were found to arise out of her employment because

there was evidence that her attackers mistook her for a nurse and

- 35 -

psychiatric testimony nurses are more likely to be sexually assaulted than women in general because nurses are seen as strongly maternal and often disturbed men have Oedipal issues).

Similarly, to recover under the Workers' Compensation Act (820 ILCS 305/1 through 30 (West 2006)), a claimant must show that his injury arises out of his employment, which means that it "had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." Sisbro, Inc. v. Industrial Comm'n, 207 Ill. 2d 193, 203, 797 N.E.2d 665, 672 (2003). A claimant's risk must be compared to that faced by the general public. Illinois Institute of Technology Research Institute v. Industrial Comm'n, 314 Ill. App. 3d 149, 162, 731 N.E.2d 795, 806 (2000). An employee might be exposed to three types of risks, namely (1) risks distinctly associated with the employment (resultant injuries are compensable); (2) risks that are personal to the employee (resultant injuries are not compensable); and (3) "neutral risks," which lack particular employment or personal characteristics. Potenzo v. Illinois Workers' Compensation Comm'n, 378 Ill. App. 3d 113, 116, 881 N.E.2d 523, 527 (2007).

Compensation for neutral risks depends upon whether the claimant was exposed to a risk of injury to an extent greater than that to which the general public is exposed. Illinois Institute of Technology Research Institute, 314 Ill. App. 3d at 163, 731 N.E.2d at 807. If an employee is exposed to a risk common to the general public to a greater degree than other

persons, the resulting injury arises out of his employment; but if the injury results from a hazard to which the employee would have been equally exposed apart from the employment or a risk personal to the employee, the injury does not arise out of his employment. Caterpillar, 129 Ill. 2d at 58-59, 541 N.E.2d at 667.

Intentional assaults by third parties are considered "neutral risks" unless evidence supports a finding that the attacker had a personal motive for the attack. See Village of Winnetka v. Industrial Comm'n, 250 Ill. App. 3d 240, 243, 621 N.E.2d 150, 152 (1993). Assaults have been held to arise out of employment on a number of occasions, particularly where working conditions increase an employee's chances of encountering a person likely to attack. County of Cook v. Industrial Comm'n, 165 Ill. App. 3d 1005, 1010, 520 N.E.2d 896, 899 (1988) (where judge's secretary was stabbed and robbed while eating lunch in employee parking lot, her injuries arose out of her employment because the parking lot's proximity to the courthouse put her at increased risk for victimization); see also Potenzo, 378 Ill. App. 3d at 119, 881 N.E.2d at 528-29 (where deliveryman was assaulted by unknown assailant while making a delivery in an alley, his injuries arose out of his employment because traveling employees are exposed to "street risks" to a higher degree than the general public); Holthaus v. Industrial Comm'n, 127 Ill. App. 3d 732, 736, 469 N.E.2d 237, 239 (1984) (injuries public pool manager suffered when attacked by an escaped convict found to

arise out of her employment because the solitary and isolated nature of her work made her "particularly vulnerable" to attack, whereas "the general public was neither required to be there nor had reason to be there"); Rush-Presbyterian, 258 Ill. App. 3d at 773, 630 N.E.2d at 1179 (physical and psychological injuries a white-uniformed hospital dietary supervisor suffered when multiply, brutally raped in the staff area of a hospital by two intruders were found to arise out of her employment because there was evidence that her attackers mistook her for a nurse and psychiatric testimony nurses are more likely to be sexually assaulted than women in general because nurses are seen as strongly maternal and often disturbed men have Oedipal issues); C.A. Dunham Co. v. Industrial Comm'n, 16 Ill. 2d 102, 112-13, 156 N.E.2d 560, 566 (1959) (death of traveling employee who was killed when airplane exploded due to bomb in cargo hold held to arise out of his employment because the travel requirements of his employment put him at increased risk for dying in a plane crash).

Adapted to the medical context, if a patient's care exposes him to a risk distinctly associated with medical care or to a risk common to the general public to a greater degree than the general public, then the injury must arise out of his patient care. However, if the injury results from a hazard to which the patient would have been equally exposed apart from the patient care, or a risk personal to the patient, the injury does not arise out of patient care.

The vast majority of these negligence cases arise from risks distinctly associated with medical care: A nurse injects too much of a given drug, a doctor amputates the wrong leg, a diagnostician fails to recognize the symptoms of a certain disease, et cetera. The injuries in Orlak (contracting a blood-borne virus from a transfusion) and Stiffler (internal damage from a detached surgically implanted device) fall into this category. Like risks distinctly associated with employment in workers' compensation cases, these injuries must always be considered to arise out of patient care.

The analysis from workers' compensation cases, then, is most usefully applied to "neutral" risks--those neither distinctly associated with medical care nor personal to the patient. Whether an injury caused by a neutral risk "arises from patient care" depends upon whether the patient was exposed to a risk of injury to an extent greater than that to which the general public is exposed. This precludes simple cases of "but-for" causation while expanding the scope of "patient care" beyond mere negligence--precisely what section 8-101(b) of the Tort Immunity Act intends. 745 ILCS 10/8-101(b) (West 2006) (applying to actions "for damages for injury or death *** whether based upon tort, or breach of contract, or otherwise" (emphases added)).

Of course, the risk analysis is predicated on a "but for" test: but for the individual's status as a patient, she would not have been exposed to a certain risk. However, the same implicit "but for" premise is utilized in the workers' compensa-

tion analysis. Thus, it is critical to examine the risk itself. For example, the general public is at a risk to be defrauded; however, depending on the extent to which the surgeon advertises to the public, only his patient might be exposed to the risk of unnecessary surgery as a means of fraud, as in Walsh. The general public is at risk to consume mislabeled nutritional supplements, even those sold to the public by a doctor or a hospital; however, in Brucker, the doctor essentially sold supplements only to his patients, putting only them at a higher risk. See Brucker, 227 Ill. 2d at 526-28, 886 N.E.2d at 320-21; Stiffler, 965 F.2d at 141.

Conversely, spoliation of evidence is a risk inherent in any lawsuit, not just one particular lawsuit arising from a specific act of patient care. See Cammon, 301 Ill. App. 3d at 950, 704 N.E.2d at 739 (claim that hospital was negligent in destroying patient records that plaintiff needed to support a medical-malpractice lawsuit did not arise out of patient care; plaintiff's injury was her inability to prove her medical-negligence allegations, and it arose out of the actual destruction of the documents, not out of the breach of the standard of care).

Moreover, if a patient trips on a curb in the clinic parking lot on his way to a doctor's appointment, or slips on a puddle of liquid in the doctor's office, his resulting injuries do not arise from his patient care; the general public is always at risk of encountering conditions like these. See Caterpillar, 129 Ill. 2d at 62-63, 541 N.E.2d at 669 (injuries incurred when

employee stepped off curb on employer's premises did not arise out of employment because "[c]urbs, and the risks inherent in traversing them, confront all members of the public"); see also Brucker, 227 Ill. 2d at 524 n.3, 886 N.E.2d at 319 n.3.

In the instant case, plaintiff's allegations fall within this definition of "patient care." The risk of an unnecessary medical examination or procedure is a risk distinctly associated with medical care. Arguably, unnecessary sedation might be a neutral risk because it can occur outside of a medical context (e.g., the use of so-called "date rape" drugs). However, unnecessary sedation in a medical setting involves a unique combination of (1) the availability of anaesthetics and (2) the trust relationship between health-care providers and patients. A person who would flee from a needle-wielding stranger on the street willingly rolls up his sleeve for his needle-wielding doctor because she trusts him. Therefore, regardless whether the risk of unnecessary sedation is considered neutral or distinctly associated with medical care, patients are still exposed to this risk to a greater extent than the general public.

What, then, of the alleged deviant sexual act? Are patients at a greater risk to be sexually assaulted than the general public? The answer is almost certainly no. Again, however, it is inappropriate to view a battery of the kind plaintiff alleges in a vacuum. Patients are at no higher risk of being sexually assaulted in general, but they are at an infinitely higher risk of being assaulted under the pretext of care

or in the course of an otherwise legitimate medical examination. This hospital sexual assault differs fundamentally from a situation in which a doctor sexually assaults a patient on the street, or in a bar, or in the hallway leading to his office. The potential for sexual abuse in the modern medical setting is evinced by the extreme pains conscientious health-care providers take to ensure they will never be accused of it. The Department of Professional Regulation may revoke or suspend a practitioner's medical license for "[i]mmoral conduct in the commission of any act including, but not limited to, commission of an act of sexual misconduct <u>related</u> <u>to</u> <u>the</u> <u>licensee's</u> <u>practice</u>." (Emphasis added.) 225 ILCS 60/22(20) (West 2006).

Our legislature has recognized the potential for sexual misconduct in the mental-health-care context in the Sexual Exploitation in Psychotherapy, Professional Health Services, and Professional Mental Health Services Act (Exploitation Act) (740 ILCS 140/1 through 7 (West 2006)). The Exploitation Act provides a private right of action against mental-health-care providers, psychotherapists, unlicensed health professionals, or unlicensed mental-health professionals for engaging in even consensual adult sexual relationships with their patients. 740 ILCS 140/2 (West 2006). Before this statute came into effect, Illinois courts suggested that sexual misconduct by therapists in the guise or course of treatment is a form of malpractice, or gross negligence, because it implicates the "transference phenomenon" referenced by plaintiff:

- 42 -

"'The "transference phenomenon" *** has been
defined in psychiatric practice as "a phenom-
enon *** by which the patient transfers feel-
ings toward everyone else to the doctor, who
then must react with a proper response, the
countertransference, in order to avoid emo-
tional involvement and assist the patient in
overcoming problems." [Citation.] The mis-
handling of this phenomenon, which generally
results in sexual relations or involvement
between the psychiatrist or therapist and the
patient, has uniformly been considered as
malpractice or gross negligence in other ju-
risdictions, whether the sexual relations
were prescribed by the doctor as part of the
therapy, or occurred outside the scope of
treatment.'" Corgan v. Muehling, 143 Ill. 2d
296, 307, 574 N.E.2d 602, 607 (1991), quoting
Horak v. Biris, 130 Ill. App. 3d 140, 146,
474 N.E.2d 13, 18 (1985).

Illinois courts have recognized that a therapist's
mishandling of the transference phenomenon by pursuing sexual
contact with his patients is a breach of a therapist's duty of
due care. See Corgan, 143 Ill. 2d 296 at 307, 574 N.E.2d at 607;
Pavlik v. Kornhaber, 326 Ill. App. 3d 731, 741-42, 761 N.E.2d
175, 184 (2001); St. Paul Fire & Marine Insurance Co. v. Downs,

247 Ill. App. 3d 382, 392, 617 N.E.2d 338, 344-45 (1993).

However, an action under the Exploitation Act is distinct from a malpractice action because the therapist's sexual misconduct must not be part of standard medical treatment. Plaintiff need not allege a failure to conform to the applicable standard of care and comply with the requirements of section 2-622 of the Code (735 ILCS 5/2-622 (West 2006)). See 740 ILCS 140(1)(f) (West 2006); Wolf v. Black Hawk College, 268 Ill. App. 3d 808, 809, 646 N.E.2d 1, 2 (1995).

Apparently, patients undergoing psychotherapeutic care are exposed to a risk of sexual exploitation that is unique to their status as patients and, thus, by definition the risk of assault is higher than that faced by the general population. However, the "transference phenomenon" may not be recognized in any medical setting other than psychotherapy. The final allegation in count III of plaintiff's first amended complaint is Schroeder's "mismanage[ment of] the transference phenomenon." Count X, which seeks to establish vicarious liability against Jersey Hospital, also mentions Schroeder's "unique position of influence over [plaintiff]," which caused her to "surrender[] almost complete control and autonomy to [Jersey Hospital] and Schroeder," as well as the foreseeable risk of sexual contact with patients attached to gynecologists in general and Schroeder in particular. Because the amended complaint alleges only that Schroeder was a gynecologist, not a psychotherapist, nor was he performing psychotherapy, no cause of action for sexual exploita-

tion exists under the Act.  However, because Kaufmann's status as a patient made her more vulnerable than the general population to the risks of unnecessary sedation, unnecessary examination, and a deviant sexual act (particularly because Schroeder allegedly isolated her), her alleged injuries arose out of patient care.

For these reasons, I would reverse the trial court's judgment.