USF HOLLAND, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Lawrence Baker, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—04—1848WC

Opinion filed May 11, 2005.

Paul A. Coghlan & Associates, P.C., of Hinsdale, for appellant.

*Horwitz, Horwitz & Associates, Ltd., of Chicago,* for appellee.

JUSTICE CALLUM delivered the opinion of the court:

## I. INTRODUCTION

Claimant, Lawrence Baker, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq*. (West 2002)) for injuries he sustained while working for employer, USF Holland, Inc. Following a hearing on claimant's section 19(b) petition (820 ILCS 305/19(b) (West 2002)), the arbitrator awarded claimant 17³/₇ weeks' temporary total disability (TTD) benefits and $4,095.49 in medical expenses, and ordered employer to authorize and pay for surgery. The Industrial Commission[1] (Commission) modified the arbitrator's decision, awarding claimant attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2002)) and penalties under sections 19(k) and (l) of the Act (820 ILCS 305/19(k), (l) (West 2002)). It otherwise affirmed and adopted the arbitrator's decision and remanded the cause pursuant to *Thomas v. Industrial Comm'n*, 78 Ill.

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

2d 327, 332-35 (1980). The trial court confirmed the Commission's decision, and employer timely appealed.

## II. BACKGROUND

An arbitration hearing was held on March 3, and 17, 2003. Claimant testified that he worked as an over-the-road truck driver for employer out of its Joliet terminal. On November 14, 2002, claimant reported to work at employer's Romulus, Michigan, terminal. He punched in and noticed that his vehicle inspection (VIN) book was missing. Claimant wanted to review the book entries to ensure that a truck leak had been repaired. He asked a female employee where he could locate the book, and she stated that it was possibly located in the shop.

Claimant asked a "yard guy" where the shop foreman's office was located. As claimant opened the door to the shop building and walked through the door, the toe area of his left boot caught on a piece of tin that covered the concrete threshold, and he fell. Claimant's left palm and left shoulder struck the ground. Claimant stood up and walked to the shop foreman's, Mike McKee's, office. According to claimant, he reported his fall to McKee and informed him that he was going to complete an accident report. In the report, claimant wrote that he fell because he did not see the "small step up" and caught his left toe.

The line haul supervisor, Sean Brooks, drove claimant to Concentra Medical Center. A physician instructed claimant to refrain from working that evening and to drive home the following day. He also ordered claimant to refrain from lifting, pulling, or pushing. On the morning of November 16, 2002, claimant drove back to Joliet and parked his tractor. He drove himself home and stayed in bed the entire weekend. Claimant noticed that his neck, left shoulder, and arms hurt, and he felt a burning sensation in his palms.

On November 18, 2002, claimant attempted to contact his family doctor, Dr. Robert Heins, in Pontiac, but he was out of town. Claimant then called his terminal manager, Jim Martin, who instructed claimant to seek care at the company clinic, Medworks, in Joliet. At Medworks, claimant saw Dr. Tim Burke, who diagnosed cervical strain and arm/shoulder sprain. Claimant received treatment at Medworks between November 18, and December 16, 2002. Dr. Burke also prescribed physical therapy, performed range-of-motion testing, and imposed a 25-pound lifting restriction. According to claimant, he contacted Martin to inquire about work within his restrictions, but was informed that none was available.

Claimant also sought treatment with Dr. Lawrence Li, an orthopedic surgeon. Dr. Li diagnosed a SLAP lesion, a partial tear of

the supraspinatus and infraspinatus tendons, and a possible rotator cuff tear. He recommended surgery and took claimant off of work "until surgery." As of the hearing date, claimant had not undergone surgery.

Addressing prior injuries, claimant testified that, in 1997, he sustained a neck injury when his truck seat malfunctioned. He was off of work for 10 months following the injury and then returned to work for employer in 1998. Thereafter, claimant experienced no problems with his neck or left shoulder until his November 2002 accident.

Claimant further testified that there were two signs on the shop door that claimant entered. One sign read "SMOKING IN DESIG-NATED AREAS ONLY," and the other read "RESTRICTED AREA UNAUTHORIZED PERSONS KEEP OUT." Claimant was unaware if line haul drivers were permitted to enter the shop area. He conceded that, ordinarily, drivers don't have to go to the maintenance facility to retrieve their books and paperwork and that he took it upon himself to go look for his book. The "yard guy" told him he could find the shop foreman's office in the shop. No managerial employee told claimant that he could enter the shop area. Photographs admitted into evidence reveal a four-inch high concrete threshold below the shop door, over which is affixed a metal strip. In one photograph, a pen is inserted between the strip and the concrete.

Michael McKee, employer's Romulus terminal supervisor, second shift, testified that he runs the repair and service garage. On November 14, 2002, claimant walked into McKee's office and informed him that he stumbled as he walked through the shop door and that he was looking for his VIN book. According to McKee, when line haul drivers are found in the shop, they are asked to leave. McKee agreed that the sign on the door did not indicate that a line haul driver is an authorized person and stated that there was no written policy or notice indicating that line haul drivers were prohibited from entering the shop. He conceded that line haul drivers, on occasion, do enter the shop.

Sean Brooks, a supervisor with employer in Detroit, testified that claimant reported his accident to him. Brooks informed claimant that he was required to be examined at the company clinic. Claimant initially refused, stating that he needed time to think about it. Brooks noticed that claimant was clenching his fist. In the accident report, Brooks wrote that claimant was going into the shop, didn't see the step, and tripped. He explained that he took claimant's version of the events and wrote them into the report. Brooks explained that, ordinarily, the VIN book would be in his possession prior to the time a truck leaves. In this case, the book should have been on the dashboard of claimant's tractor.

Finding that the risk posed to claimant by the tin piece on the four-inch concrete shop doorway threshold on employer's premises was peculiar to claimant's employment and not common to the general public, the arbitrator found that claimant's injury arose out of and in the course of his employment with employer. The arbitrator further noted that claimant entered the shop while looking for the VIN book, which he needed to properly perform his work duties. Finding the claimant's condition was causally related to his work injuries, the arbitrator awarded claimant $17^3/7$ weeks' TTD benefits and $4,095.49 in medical expenses, and ordered employer to authorize and pay for the surgery prescribed by Dr. Li. The arbitrator denied claimant's request for penalties and attorney fees.

The parties filed cross-petitions for review. On September 18, 2003, the Commission modified the arbitrator's decision. It found that employer had no reasonable basis on which to deny liability. Accordingly, it awarded claimant $1,220 in section 19(l) penalties, $7,799.17 in section 19(k) penalties, and $3,119.67 in section 16 attorney fees. The Commission otherwise affirmed and adopted the arbitrator's decision and remanded the cause pursuant to *Thomas*, 78 Ill. 2d at 332-35.

Employer sought judicial review. On June 11, 2004, the trial court confirmed the Commission's decision. Employer timely appealed.

### III. STANDARD OF REVIEW

■ Generally, the question of whether a claimant's injury arose out of or in the course of the claimant's employment is a question of fact for the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Joiner v. Industrial Comm'n*, 337 Ill. App. 3d 812, 815 (2003). Similarly, the Commission's determination of whether a claimant is entitled to additional compensation and attorney fees is a factual question and will not be disturbed on review unless it is against the manifest weight of the evidence. *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 836 (2002). For a finding of fact to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992).

### IV. ANALYSIS

#### A. Arising Out of Claimant's Employment

■ First, employer argues that the Commission erred in finding that claimant's injury arose out of his employment. To obtain compensation under the Act, a claimant must show, by a preponder-

ance of the evidence, that he or she suffered a disabling injury that arose out of and in the course of the claimant's employment. 820 ILCS 305/2 (West 2002); *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). An injury "arises out of" one's employment if it originates from a risk connected with, or incidental to, the employment and involves a causal connection between the employment and the accidental injury. *Baggett*, 201 Ill. 2d at 194. A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his or her duties. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58 (1989).

■ Initially, employer argues that the Commission applied the wrong legal standard in finding that claimant's injuries arose out of his employment. Specifically, the Commission did not find that the step was defective, but found that claimant was injured while on employer's premises in an area that was not open to the general public. This analysis, according to employer, essentially applies the positional risk doctrine. The doctrine, which has been rejected in Illinois (*Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 552-53 (1991)), states that an injury arises out of the employment if it would not have occurred but for the fact that the conditions or obligations of the employment placed the claimant in the position where he or she was injured by a neutral force (*i.e.*, neither a personal nor employment-related force). *Brady*, 143 Ill. 2d at 552.

The arbitrator found that claimant caught his boot on the tin threshold, "which was not flush to the concrete threshold," and that, as a result, claimant tripped and fell. In its decision, the Commission did not explicitly find that the threshold was defective. Rather, it noted that "[t]his is not a positional risk case," but also found that claimant "was on [employer's] premises, in an area that was not open to the general public, when he caught his toe in a threshold and fell." Although the Commission's findings here are open to different interpretations, we note that a reviewing court can affirm the Commission's decision if there is any legal basis in the record to support its decision, regardless of the Commission's findings or reasoning. *General Motors Corp. v. Industrial Comm'n*, 179 Ill. App. 3d 683, 695 (1989).

Employer next argues that the step posed no employment or personal risk to claimant and was thus a neutral risk. Because employees are routinely exposed to the risks of traversing doorways and stairways every day, as is the general public, claimant was not exposed to a greater risk than the general public and therefore his injuries did not arise out of his employment.

Employer relies on *Caterpillar Tractor Co.* In that case, the claim-

ant injured himself while stepping off a curb in the employer's parking lot. The supreme court first considered whether the claimant's injury resulted from the condition of the employer's premises. It noted that the claimant did not skip, trip, or fall. The court then held that the injury did not result from the condition of the premises because there was no evidence that the curb was either hazardous or defective. *Caterpillar Tractor Co.*, 129 Ill. 2d at 61. Next, the court considered whether the claimant was subjected to a greater degree of risk than the general public due to his employment. It found that curbs and the risks that are inherent in traversing them confront all members of the public. Rejecting the claimant's argument that he regularly crossed the curb to reach his car, the court found that there was nothing in the record to distinguish this curb from any other curb. Accordingly, the court held that the Commission's finding that the claimant's injury arose out of his employment was contrary to the evidence. *Caterpillar Tractor Co.*, 129 Ill. 2d at 63.

■ We find *Caterpillar Tractor Co.* distinguishable. In that case, there was no evidence that there existed a defect on employer's premises, specifically with the curb. Here, however, we conclude that the Commission could reasonably have inferred that claimant's accident was attributable to a defect in the threshold. See *Caterpillar Tractor Co.*, 129 Ill. 2d at 62 (liability is imposed where an injury occurs as a direct result of a hazardous condition on the employer's premises). A photograph revealed that a pen could fit between the concrete threshold and the metal strip on top of it. Claimant testified that the toe area on his boot caught on the metal and caused him to fall. Based on this evidence, we cannot conclude that the Commission erred in awarding benefits.

Employer also challenges the Commission's TTD, medical expenses, and prospective medical awards. We do not address these issues at length because they are based on employer's argument that claimant's injuries did not arise out of his employment.

### B. Penalties and Fees

■ Next, employer challenges the Commission's assessment of penalties and fees. The section 19(l) penalty is in the nature of a late fee. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515 (1998). Assessment of the penalty is mandatory "[i]f the [benefit] payment is late, for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay." *McMahan*, 183 Ill. 2d at 515. In determining whether an employer has "good and just cause" in failing to pay or delaying payment of benefits, the standard is reasonableness. *McMahan*, 183 Ill. 2d at 515.

Generally, an employer's reasonable and good-faith challenge to liability does not warrant the imposition of penalties. *Matlock v. Industrial Comm'n*, 321 Ill. App. 3d 167, 173 (2001); see, *e.g.*, *Complete Vending Services, Inc. v. Industrial Comm'n*, 305 Ill. App. 3d 1047, 1051 (1999) (Commission's imposition of penalties reversed in a case where the claimant was injured en route to a service call via a stop at his office while driving the company van; court found there was a valid dispute as to whether claimant's injuries arose out of and in the course of his employment and further found facts were somewhat unique and that one commissioner dissented). When the employer acts in reliance upon reasonable medical opinion or when there are conflicting medical opinions, penalties ordinarily are not imposed. *Matlock*, 321 Ill. App. 3d at 173; see, *e.g.*, *Ford Motor Co. v. Industrial Comm'n*, 126 Ill. App. 3d 115 (1984) (Commission's assessment of section 19(l) penalties reversed, where the employer disputed causation relying on a physician's report that indicated the claimant suffered from conditions that were unrelated to his work accident). An employer's belief is honest only if the facts in the possession of a reasonable person in the employer's position would justify it. *Board of Education of the City of Chicago v. Industrial Comm'n*, 93 Ill. 2d 1, 10 (1982). The burden of proof is on the employer. *Mobil Oil Corp. v. Industrial Comm'n*, 309 Ill. App. 3d 616, 626 (1999).

■ Imposition of section 19(k) penalties is discretionary. *McMahan*, 183 Ill. 2d at 515. They are assessed when a benefit payment delay is deliberate or results from bad faith or "improper purpose." *McMahan*, 183 Ill. 2d at 515. Section 16 applies in the same circumstances. *McMahan*, 183 Ill. 2d at 515. The imposition of section 19(k) penalties and section 16 attorney fees requires a higher standard of proof than an award of additional compensation under section 19(l). *McMahan*, 183 Ill. 2d at 514. Section 19(k) penalties may be awarded for an employer's failure to pay medical expenses. *McMahan*, 183 Ill. 2d at 512.

■ Employer argues that the Commission erred in assessing section 19(l) penalties because employer has contested whether claimant's injuries arose out of his employment since the commencement of claimant's action, relying on claimant's statement in the accident report that he did not see the small step up and tripped as he walked through the doorway. Also, employer points out that reasonable minds differed on this issue, as the arbitrator and the Commission disagreed on whether penalties were warranted in this case.

In its decision, the Commission did not set forth specific findings addressing its assessment of penalties and fees. We agree that employer has consistently challenged claimant's contention that his

injury arose out of his employment, and it has relied on case law with a fact pattern fairly similar to the facts present here. Although we affirm the Commission's finding that claimant's injuries arose out of his employment, the record does not reveal that employer's position was unreasonable. Accordingly, we conclude that the Commission's finding that claimant is entitled to section 19(l) penalties is against the manifest weight of the evidence.

Given our determination that the lower standard of proof required to impose section 19(l) penalties was not met, we further conclude that the Commission's assessment of section 19(k) penalties and section 16 attorney fees was against the manifest weight of the evidence.

## V. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and the cause is remanded to the Commission pursuant to *Thomas*, 78 Ill. 2d at 332-35.

Affirmed in part; reversed in part; cause remanded.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and DONOVAN, JJ., concur.