BILL REYNOLDS, Appellant and Cross-Appellee, v. ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Otto Baum Company, Inc., Appellee and Cross-Appellant).

Third District (Illinois Workers' Compensation Commission Division)
No. 3—08—0759WC

Opinion filed November 9, 2009.

Mark M. Wilson and Scott J. Ganassin, both of Schweickert & Ganassin, of Peru, for appellant.

Brad A. Elward and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria, and Kevin J. Luther, Brad A. Antonacci, and Dana J. Hughes, all of Heyl, Royster, Voelker & Allen, of Rockford, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On August 27, 2004, claimant, Bill Reynolds, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 through 30 (West 2002)), seeking benefits from employer, Otto Baum Co., for injuries he suffered to his neck on July 13, 2004. After a hearing, an arbitrator found claimant proved he sustained accidental injuries arising out of and in the course of his employment with employer and awarded claimant benefits. The arbitrator also found that employer unreasonably and vexatiously delayed and refused payment of temporary total disability (TTD) benefits and medical expenses to claimant. As such, the arbitrator awarded penalties under section 19(k) of the Act (820 ILCS 305/19(k) (West 2004)) and penalties under section 19(l) of the Act (820 ILCS 305/19(*l*) (West 2004)).

On review, the Illinois Workers' Compensation Commission (Commission) affirmed and adopted the arbitrator's decision and remanded the matter to the arbitrator pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980). The circuit court confirmed that portion of the Commission's decision finding claimant proved he sustained accidental injuries arising out of and in the course of his employment with employer, and reversed that portion of the Commission's decision finding employer unreasonably and vexatiously delayed and refused payment of TTD benefits and medical expenses to claimant.

Claimant now appeals arguing that the Commission did not err when it imposed penalties (820 ILCS 305/19(k), 19(*l*) (West 2004)). Employer filed a cross-appeal challenging the portion of the Commission's decision that found claimant proved he sustained accidental injuries arising out of and in the course of his employment with employer. However, employer voluntarily withdrew the cross-appeal. Only claimant's appeal is before this court. For the reasons that follow, we affirm the judgment of the circuit court.

The following factual recitation is taken from the evidence presented at the arbitration hearing on April 27, 2005. The 42-year-old claimant testified that he had worked as a laborer for approximately seven years. Claimant worked for employer on July 13, 2004. While erecting scaffolding, claimant attempted to dislodge multiple wood planks, the final two saturated with water and weighing approximately 100 pounds. Claimant reached for the end of the last plank, with his neck snug to the metal scaffold. Claimant pulled with his left hand and arm while pushing with his right hand and arm, above shoulder height. Claimant felt a "tingling vibration, spasms down in the neck," and stopped working. Claimant continued to experience neck spasms and increasing pain. Claimant spent the following scheduled day off in bed. Claimant testified that his pain moved into his shoulders. Claimant returned to work the following day, providing written notice of the accident to his supervisor. Claimant continued to work until July 22, 2004, while experiencing increasing pain.

Claimant sought treatment with Dr. Matthew Marti, a chiropractor, on July 24, 2004. Claimant reported neck pain, weakness in the left arm, nausea, and headache. Dr. Marti prescribed chiropractic and manipulative care, electrical stimulation, and further diagnostic testing, and took claimant off of work.

At employer's request, claimant was examined by Dr. Christine Cisneros on August 4, 2004. In her report of that visit, Dr. Cisneros stated that claimant experienced significant cervical muscle spasm on the left side, with pain on flexion and left lateral rotation. Dr. Cisneros recommended that claimant have an MRI scan of the cervical spine. She prescribed a course of physical therapy, Motrin, Flexeril, Vicodin, and Myolflex cream, and authorized claimant to remain off of work.

The claimant underwent the recommended MRI scan on August 7, 2004. The report states that the scan revealed (1) loss of normal cervical lordosis with slight kyphosis centered at approximately the C4-5 level, (2) degenerative disease at C4-5 and C5-6, (3) right-sided disc herniation at C4-5, (4) left-sided disc herniation at C3-4 and C5-6, (5) mild cord compression, and (6) left-sided foraminal narrowing at C5-6.

In a report dated August 10, 2004, Dr. Cisneros queried, "Could a mechanism of injury a series of gradual events pulling and lifting 16 foot planks as opposed to a sudden event produce such profound and diffuse cervical findings?" Dr. Cisneros expressed difficulty understanding "how such events would produce the injuries described in the MRI."

On referral from Dr. Cisneros, claimant was seen by Dr. Steven Delheimer, a neurosurgeon, on August 16, 2004. Dr. Delheimer stated

that the MRI showed degenerative disc disease at C3-4, C4-5, and C5-6, and the most significant level was C5-6, "where there is a small to moderate disc bulge/herniation extending into the left foramina." He added, "I believe that this is the symptomatic level and do not believe that either C3-4 or C4-5 are significant or contributing to his ongoing problems." Because claimant reported pain of only 1 out of 10 on August 16, 2004, he recommended conservative care including physical therapy and noting that claimant might require an epidural steroid injection.

Claimant returned to see Dr. Cisneros on August 17, 2004, complaining of "persistent headaches (frontal and posterior) that start with the cervical and upper back tightness." Upon physical examination, Dr. Cisneros noted cervical muscle spasm and diminished left-side biceps reflex. Dr. Cisneros prescribed Indocin, Solu-Medrol, Tagamet, Flexeril, Vicodin, and Myoflex cream. The doctor again authorized claimant to remain off of work.

On referral from Dr. Marti, claimant was seen by Dr. George DePhillips, a neurosurgeon, on August 26, 2004. Dr. DePhillips reviewed the MRI scan and recommended a cervical discogram. Dr. DePhillips recommended that claimant remain off work and referred him to Dr. Michael Malek for a second opinion. Claimant was examined by Dr. Malek on October 6, 2004. Dr. Malek reviewed the MRI scan, noting disc herniation worse at C5-6 with left paracentral disc herniation; also, right paracentral disc herniation at C4-5 and smaller lateral disc herniation at C3-4. Dr. Malek recommended continued physical therapy, an epidural injection, a bilateral upper extremity EMG, and a CT/myelogram. Dr. Malek recommended that claimant remain off of work.

On October 18, 2004, claimant underwent a myelogram and post-myelogram CT scan. The scan revealed (1) moderate-sized C3-4 disc protrusion, (2) moderate to larger central- to right-sided C4-5 disc protrusion, and (3) slightly less pronounced but significant-sized central to left C5-6 disc protrusions that showed subtle posterior neurospinal impingment.

Claimant had an EMG/NCV study on October 20, 2004. Dr. Angela Benevides noted that the EMG was normal except for increased muscle activity from spasms of the cervical paraspinal muscles.

Dr. DePhillips returned claimant to light-duty work on November 4, 2004. Employer did not provide claimant light-duty work.

Claimant sought treatment with Dr. Robert Eilers on December 1, 2004, at the request of claimant's counsel. In his report, Dr. Eilers noted multiple disc herniations with significant cervical myofascial pain syndrome and paraspinal muscle spasm resulting in a reduction

of cervical lordosis. Dr. Eilers stated that claimant's injury at work "is certainly consistent with the disk herniation injury, becoming clearly symptomatic and resulting in the radicular symptoms that he is experiencing."

On December 3, 2004, claimant underwent a cervical discogram and CT scan which revealed internal disc disruption at C3-4 with full thickness tear and extra annular leakage, a C4-5 radial tear extending to the outer one-third of the annulus, as well as a C5-6 full thickness tear with extra annular leakage. Dr. DePhillips noted the discogram provoked concordant pain at C3-4, C4-5, and C5-6 and recommended an anterior cervical discectomy with fusion from C3 to C6, as well as bilateral foraminotomies, spinal cord decompression, nerve root decompression, debulking of spurs, and excision of herniated discs.

At employer's request, claimant was examined by Dr. Gunner Andersson on December 15, 2004. In his report, Dr. Andersson admitted he had not seen "the MRI, discogram or disco-CT." He opined, however, that claimant's symptoms "[were] likely related to the degenerative changes that he has in the cervical spine. None of those are the result of an injury." Dr. Andersson continued, "[i]t is, of course, possible that the patient aggravated his neck while working on July 13 but there is no evidence that this aggravation, if any, was so severe that it would result in a permanent problem or in an acceleration of the pre-existing degenerative changes." Dr. Andersson prepared a second report dated January 17, 2005, acknowledging receipt of reports relating to the MRI and discogram and stating that his opinions on causation had not changed.

Dr. DePhillips and Dr. Malek performed a three-level diskectomy and cervical fusion on January 25, 2005.

Claimant testified at the hearing on April 27, 2005, that his headaches were improved and the pain was no longer radiating from his neck through his left arm. Although claimant continues to have daily discomfort, the intensity is much less than before surgery. Claimant continued with physical therapy.

After the hearing, the arbitrator found claimant proved he sustained accidental injuries arising out of and in the course of his employment with employer and awarded claimant TTD benefits of $584.87 per week for 39$4/7$ weeks; and $46,905.53 for medical expenses incurred by claimant. The arbitrator further awarded penalties under sections 19(k) and 19(*l*), finding that employer unreasonably relied on Dr. Andersson's opinions.

On review, the Commission affirmed and adopted the arbitrator's decision and remanded the matter to the arbitrator pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

The circuit court confirmed that portion of the Commission's decision finding claimant proved he sustained accidental injuries arising out of and in the course of his employment with employer, and reversed that portion of the Commission's decision finding employer unreasonably and vexatiously delayed and refused payment of TTD benefits and medical expenses to claimant. This appeal followed.

██ █ Claimant argues that the Commission did not err when it imposed penalties (820 ILCS 305/19(k), 19(*l*) (West 2004)). Whether to award penalties presents a factual question. *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002, 1024, 832 N.E.2d 331, 351 (2005). We will not disturb the decision of the Commission on these matters unless it is contrary to the manifest weight of the evidence. *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198, 209, 437 N.E.2d 617, 623 (1982). Penalties are appropriate where an employer's decision to delay payment of benefits is unreasonable or vexatious. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515, 702 N.E.2d 545, 553 (1998). Generally, "[w]hen the employer acts in reliance upon reasonable medical opinion or when there are conflicting medical opinions, penalties ordinarily are not imposed." *USF Holland, Inc. v. Industrial Comm'n*, 357 Ill. App. 3d 798, 805, 829 N.E.2d 810, 817 (2005). The relevant question is "whether the employer's reliance was objectively reasonable under the circumstances." *Electro-Motive Division v. Industrial Comm'n*, 250 Ill. App. 3d 432, 436, 621 N.E.2d 145, 148 (1993). Section 19(*l*), which is more in the nature of a late fee, allows an award upon a lesser showing, applying when an employer "neglects, or refuses to make payment or unreasonably delays payment 'without good and just cause.' " *McMahan*, 183 Ill. 2d at 515, 702 N.E.2d at 553, quoting 820 ILCS 305/19(*l*) (West 1992). The employer bears the "burden of showing that it had a reasonable belief that the delay was justified." *Roodhouse Envelope Co. v. Industrial Comm'n*, 276 Ill. App. 3d 576, 579, 658 N.E.2d 838, 840 (1995).

██ Employer asserts that its denial of benefits was reasonable because it had set forth a meritorious defense based on the medical opinions of Drs. Cisneros, Delheimer, and Andersson. Drs. Cisneros and Delheimer reviewed the MRI scan of claimant's spine, and Dr. Andersson reviewed the report of the MRI. The testimony was relatively compelling, even if it did not ultimately persuade the Commission. Accordingly, employer could rely upon Drs. Cisneros, Delheimer, and Andersson, and no reasonable person could conclude that employer was not entitled to do so. Since an abuse of discretion occurs when no reasonable person could agree with the position taken by the Commission (*Certified Testing v. Industrial Comm'n*, 367 Ill. App. 3d 938, 947, 856 N.E.2d 602, 610 (2006)), we are compelled to conclude

that the Commission abused its discretion in imposing penalties. We reverse its decision in this respect.

Based upon the foregoing analysis, we affirm the judgment of the circuit court which confirmed in part and reversed in part the Commission's decision and remand to the Commission for further proceedings.

Affirmed; cause remanded.

HOFFMAN, HUDSON, HOLDRIDGE, and DONOVAN, JJ., concur.