Docket No. 109738.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

_____

KRISTEN KAUFMANN, Appellant, v. ROGER A. SCHROEDER, M.D., *et al.* (Jersey Community Hospital, a Municipal Corporation, Appellee).

*Opinion filed February 25, 2011.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justice Theis concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by Justices Thomas and Karmeier.

Justice Garman dissented, with opinion, joined by Chief Justice Kilbride.

**OPINION**

The single issue in this case is whether claims brought by plaintiff, Kristen Kaufmann (Kaufmann), against Jersey Community Hospital (JCH) are time-barred. Kaufmann initially filed suit against Dr. Roger A. Schroeder (Schroeder) and JCH on December 31, 2007, to recover for injuries suffered during a hospitalization in January 2006. The circuit court of Jersey County found that the one-year limitation period found in section 8–101(a) of the Local Governmental and Governmental Employees Tort Immunity Act

(Tort Immunity Act or Act) (745 ILCS 10/8–101(b) (West 2006)) applied with respect to claims brought against JCH. Because Kaufmann's suit was filed more than one year from the date of her alleged injuries, the circuit court dismissed the claims against JCH as time-barred.

Kaufmann appealed contending that her complaint was timely filed with respect to JCH because she is seeking recovery for injuries "arising out of patient care" and, thus, the two-year statute of limitations in section 8–101(b) of the Tort Immunity Act applies. The appellate court affirmed the circuit court's dismissal order. 396 Ill. App. 3d 729. For reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

On December 31, 2007, Kaufmann filed an initial two-count complaint against Schroeder and JCH. She amended the complaint on June 23, 2008. In her amended complaint, consisting of 10 counts, Kaufmann alleged that she had been hospitalized at JCH in January 2006 by Dr. Schroeder, who had been her obstetrician-gynecologist since 2004. Kaufmann further alleged that during her hospitalization she was sedated by Dr. Schroeder for "an unnecessary exam and/or procedure which did not require sedation" and that, after she was sedated, Dr. Schroeder committed a deviant act of a sexual nature on her. Specifically, Kaufmann claimed that, as she began to regain consciousness after being sedated, she became aware that Dr. Schroeder was licking her breasts.

As to JCH, Kaufmann's complaint contained allegations that JCH had been aware that Dr. Schroeder had sexually attacked other patients yet continued to permit him to examine female patients without having a nurse or other staff member present. Kaufmann also alleged that she notified the Illinois State Police of the incident and the police instructed her to refrain from filing suit against Dr. Schroeder until the police were able to collect certain unspecified evidence regarding Dr. Schroeder's sexual assault of Kaufmann and

-2-

other patients.[1]

Counts I through III of the amended complaint were brought against Dr. Schroeder and alleged battery, intentional infliction of emotional distress and negligence. Counts IV through X of the amended complaint were brought against JCH and alleged negligent hiring, negligent retention, negligent supervision, "negligence (willful and wanton)," intentional infliction of emotional distress, negligent infliction of emotional distress and vicarious liability for the misconduct of Dr. Schroeder as alleged in counts I through III.

On July 3, 2008, JCH moved for the dismissal of Kaufmann's amended complaint, alleging that it was time-barred. The hospital argued that, because it is a municipal corporation, the governing statute of limitations is section 8–101(a) of the Tort Immunity Act (745 ILCS 10/8–101(a) (West 2006)). That provision requires that any suit brought against a local governmental entity be commenced within one year of the date the injury was received or the cause of action accrued. Because Kaufmann filed suit more than one year from the date the injury was received, JCH contended that the cause of action should be dismissed.

Kaufmann disagreed. She argued that because her injuries arose out of patient care, the two-year statute of limitations in section 8–101(b) of the Act (745 ILCS 10/8–101(b) (West 2006)) applied and, thus, her complaint was timely.

The circuit court granted the hospital's motion and dismissed counts IV through X of Kaufmann's complaint. Kaufmann sought reconsideration. However, after a hearing, the circuit court denied plaintiff's motion and expressly held, pursuant to Supreme Court

---

[1]This factual allegation was made in relation to Kaufmann's alternative argument before the appellate court that, if the one-year statute of limitations in section 8–101(a) of the Tort Immunity Act applied, the limitations period should be equitably tolled because she was prevented from filing her civil suit while the criminal investigation was pending. The appellate court found no basis for tolling the statute of limitations because Schroeder was indicted in May 2006, which left Kaufmann more than six months to file her claims against JCH before the one-year limitations period expired. 396 Ill. App. 3d at 743. Kaufmann does not raise equitable tolling as an issue in her appeal before this court.

Rule 304(a), that there was no just reason to delay appeal. Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006).

Plaintiff appealed and on December 8, 2009, the appellate court filed an opinion affirming the circuit court's dismissal of Kaufmann's complaint. 396 Ill. App. 3d 729. A majority of the court held that the one-year limitations period applied because "[p]laintiff's injuries arose from Schroeder's act of sexual gratification, which was clearly separate from her patient care." 396 Ill. App. 3d at 742. Presiding Justice Myerscough dissented. She agreed with plaintiff that the two-year statute of limitations applied. In her view plaintiff's injuries arose out of patient care because, "This is not a case of sexual assault that just happened to occur in a medical setting, this is a case of sexual assault that is inextricable from plaintiff's medical care."

We granted plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

ANALYSIS

As noted earlier, the single issue before this court is whether, with regard to JCH, Kaufmann's complaint was timely filed. JCH is a municipal corporation and, as such, the time period in which a claim may be brought against it is limited by the Local Governmental and Governmental Employees Tort Immunity Act. Section 8–101 of the Act, which sets forth the limitation periods, provides in subsection (a):

> "No civil action *other than an action described in subsection (b)* may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." (Emphasis added.) 745 ILCS 10/8–101(a) (West 2006).

The exception referred to in subsection (a) and contained in subsection (b) is as follows:

> "No action for damages for injury or death against any local public entity or public employee, whether based upon tort, or breach of contract, or otherwise, *arising out of patient care* shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence

-4-

should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of those dates occurs first, but in no event shall such an action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death." (Emphasis added.) 745 ILCS 10/8–101(b) (West 2006).

In the case at bar, JCH argues that the circuit and appellate courts below correctly found that the one-year limitations period in section 8–101(a) applied to the seven counts brought against it in Kaufmann's complaint. Kaufmann, however, contends that the lower courts were incorrect and that the limitations period found in subsection (b) applies because the injuries for which she seeks recovery are injuries arising out of patient care.

The ultimate issue before this court, therefore, is whether the injuries for which Kaufmann seeks recovery in her claims against JCH are injuries "arising out of patient care" within the meaning of section 8–101(b) of the Act. In the seven counts brought by Kaufmann against JCH, Kaufmann seeks recovery based on various claims of independent negligence by JCH, as well as its vicarious liability for the negligence of its employee, Dr. Schroeder. However, in all instances, Kaufmann seeks recovery for damages based on the injuries she suffered as a result of the sexual battery committed by Dr. Schroeder. Kaufmann concedes this to be so, but contends that the sexual battery occurred during her hospitalization and in the course of her treatment by Dr. Schroeder. Thus, she contends her injuries stemming from the sexual battery arose out of patient care. We disagree.

Although we have never interpreted section 8–101(b) of the Act, we have interpreted the identical language contained within the limitations provision in section 13–212 of the Code of Civil Procedure (735 ILCS 5/13–212 (West 2006)), which pertains to civil actions brought against a physician or hospital. See *Brucker v. Mercola*, 227 Ill. 2d 502 (2007); *Orlak v. Loyola University Health System*, 228 Ill. 2d 1 (2007). Section 13–212 provides:

"Except as provided in Section 13–215 of this Act [735 ILCS 5/13–215], no action for damages for injury or death against

-5-

any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, *arising out of patient care* shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Emphasis added.) 735 ILCS 5/13–212(a) (West 2006).

It is entirely appropriate that we should interpret the "arising out of patient care" language contained in subsection (b) of section 8–101 of the Tort Immunity Act in conformity with section 13–212 because the two provisions were intended to be harmonious. In 2003, the legislature amended the Tort Immunity Act, adding subsection (b) in an effort to bring it in alignment with section 13–212. As Representative Hultgren explained, by adding subsection (b), a person who suffers injuries arising out of patient care would not be disadvantaged by a shortened limitations period simply because he or she happened to obtain treatment at a public facility rather than a private one. See 93d Ill. Gen. Assem., House Proceedings, April 15, 2003, at 7-8 (statements of Representative Hultgren).

Turning to our previous interpretation of the "arising out of patient care" language, we first look to *Brucker*. In *Brucker*, this court concluded that an injury arises out of patient care if the injury is causally connected to the patient's medical care and treatment. See *Brucker*, 227 Ill. 2d at 523. Although we agreed that "arising out of patient care" was to be construed broadly, we emphasized that our interpretation was not so broad as to encompass "but for" causation. *Brucker*, 227 Ill. 2d at 523-24.

Similarly, in *Orlak*, this court reiterated that "arising out of patient care" did not encompass "but for" causation. Rather, it meant that the injury had " '[t]o originate; to stem (from),' or 'to result (from)' " the patient's medical care or treatment. See *Orlak*, 228 Ill. 2d at 14-15 (quoting Black's Law Dictionary 115 (8th ed. 2004)).

In the case before this court, Kaufmann did not allege that she was injured because of the medical treatment she received. In other words, she did not claim that the "unnecessary" exam and sedation she received during her hospitalization harmed her in any way. Rather, the harm resulted from the sexual assault. The sedation that was given and the "unnecessary" exam (if one was, in fact, performed) were not part of Kaufmann's medical treatment, but simply a means by which Schroeder was able to accomplish his sexual assault on Kaufmann.

In sum, we find that Kaufmann's injury arose out of Dr. Schroeder's sexual assault and not any medical care she received from him. The sexual assault, itself, was not medical care, nor was there even any pretense that Dr. Schroeder's sexual acts were necessitated by, or in any way related to, the medical care he was providing to Kaufmann. There was no suggestion by Schroeder that there existed a medical reason for his actions.

CONCLUSION

Kaufmann's injury did not arise from patient care. For this reason, subsection (b) of the Tort Immunity Act, containing the two-year limitations period for injuries "arising out of patient care," is inapplicable and, thus, the claims brought against JCH were properly dismissed as time-barred.

For the reasons stated, the appellate court judgment is affirmed.

Affirmed.

JUSTICE FREEMAN, specially concurring:

Although I join fully in today's decision holding that plaintiff's injury did not arise from patient care, I write separately to explain that the standard the court employs is consistent with our precedent and not, as the dissent suggests, a "significant departure" from it.

This case requires us to revisit *Brucker v. Mercola*, 227 Ill. 2d 502 (2007), a divided decision in which I joined in the majority opinion. In *Brucker* this court addressed, as it does here, the statutory phrase "arising out of patient care," and looked to workers' compensation

cases for guidance in construing the term. In doing so, we relied on *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193 (2003), a workers' compensation case in which the court stated:

> "The 'arising out of' component is primarily concerned with causal connection. To satisfy this requirement it must be shown that the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Sisbro*, 207 Ill. 2d at 203.

With this construction in mind, we held in *Brucker* that "arising out of patient care" simply required "a causal connection between the patient's medical care and the injury." *Brucker*, 227 Ill. 2d at 523. The phrase was not to be construed so broadly as to encompass "but for" causation, but it nevertheless covered injuries which had their origin in, or were incidental to, a patient's medical care and treatment. *Brucker*, 227 Ill. 2d at 523-24. Applying this standard, we concluded the plaintiff's injury arose out of patient care. In *Brucker*, the plaintiff alleged she and her fetus were poisoned when her doctor negligently sold her the wrong substance to treat a medical condition the doctor had diagnosed. We held the injury was caused by the plaintiff's medical treatment.

Here, plaintiff's injury resulted when her doctor allegedly committed a sexual assault against her while she was hospitalized for a urinary tract infection. According to plaintiff, the doctor licked her breasts. Using the exact same standard applied in *Brucker*, it cannot be said that the alleged sexual assault against plaintiff was caused by her medical treatment for a urinary infection. Simply stated, the injury did not have its origin in, nor was it incidental to, the medical treatment for plaintiff's infection. The only connection between this treatment and plaintiff's injury is that, "but for" being in the hospital for the treatment, she would not have been in the place where the alleged assault occurred.

Moreover, to hold that plaintiff's injury *did* arise from patient care would be to conclude that criminal acts such as the alleged sexual assault at issue here have their origin in or are incidental to medical treatment. I do not believe the legislature, in drafting section 8–101(b) of the Tort Immunity Act, intended criminal acts such as sexual assault to be included within the ambit of "patient care." As the

appellate court below concluded:

> "To find [that the doctor's] actions constituted patient care, we would have to believe the General Assembly intended that anything a physician does to a patient constitutes patient care. We conclude the General Assembly did not have this intent." 396 Ill. App. 3d at 741.

Mindful of the maxim that courts "must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results" (*Brucker*, 227 Ill. 2d at 514), I believe today's decision is consistent with both this court's precedent and, more important, the General Assembly's intent. For these reasons, and those expressed in today's opinion, I join in the court's decision.

JUSTICES THOMAS and KARMEIER join in this special concurrence.

JUSTICE GARMAN, dissenting:

As the majority points out, the "ultimate issue" before this court is whether the plaintiff's complaint constitutes an "action for damages for injury or death *** arising out of patient care" within section 8–101(b) of the Act. I agree with the majority that section 8–101(b) should be given the same effect as the identical language of section 13–212 of the Code of Civil Procedure, for all of the enumerated reasons. However, the majority's treatment of *Brucker* and *Orlak* is incomplete and overlooks both the spirit and the language of those cases. As a result, the majority today effectively applies a new standard that is a significant departure from our precedents and those of the appellate court. For these reasons, I respectfully dissent.

As the majority notes, this court first discussed the meaning of section 13–212's "arising out of patient care" language in *Brucker v. Mercola*, 227 Ill. 2d 502 (2007). In my view, a full discussion of that case is warranted. There, Anna Brucker and her husband filed a two-count medical malpractice action against Dr. Joseph Mercola and his practice. The complaint alleged that, while she was pregnant, Brucker sought advice from Dr. Mercola regarding an allergy problem. Mercola, a doctor of osteopathic medicine, prescribed an L-glutamine

supplement. As a service to his patients, Mercola's office sold many nutritional supplements, including L-glutamine. Mercola testified in his deposition that his customers were almost all patients, but that sometimes one of his patients would refer a friend or family member to make a purchase. When Brucker tried to purchase the L-glutamine from Mercola, however, she was given a bottle that instead contained selenium. Later, it was discovered that one of Mercola's employees had accidentally filled several L-glutamine bottles with selenium, because the selenium was unlabeled in the storage room and left where L-glutamine was typically kept. Brucker followed Mercola's dosage instructions, believing the supplement to be L-glutamine, and she ingested a toxic dose of selenium. *Brucker*, 227 Ill. 2d at 506-09.

While the action was pending, Brucker amended her complaint to include a third count, brought on behalf of her minor son, Robert Brucker. Count III alleged that Robert, with whom Anna was pregnant at the time of the incident, had been poisoned *in utero* when Anna ingested the selenium. The defendants moved to dismiss the amended count, however, arguing that it was barred by section 13–212(b)'s statute of repose. *Id.* Section 13–212(b) provides, in pertinent part:

> "Except as provided in Section 13–215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 8 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death where the person entitled to bring the action was, at the time the cause of action accrued, under the age of 18 years ***." 735 ILCS 5/13–212(b) (West 2006).

The plaintiffs acknowledged that count III had been filed more than eight years after the alleged injury to Robert, but they argued, *inter alia*, that the complaint was one alleging simple negligence, not an injury "arising out of patient care."

In beginning our analysis, this court noted that "when a cause of action is filed against a physician or other covered medical provider, the legal theory upon which the plaintiff styles his or her claim will

-10-

not govern whether section 13–212 applies." *Brucker*, 227 Ill. 2d at 515. We referred to *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450 (1990), in which this court discussed the purpose and intent behind section 13–212. In both *Hayes* and *Brucker*, the court acknowledged that the statute of repose was enacted in response to what the legislature viewed as a medical malpractice insurance crisis. The statute was "viewed as necessary to prevent extended exposure of physicians and other hospital personnel to potential liability for their care and treatment of patients, thereby increasing an insurance company's ability to predict future liabilities. [Citation.] This increased ability to predict liability was meant to assist in reducing health-care malpractice insurance premiums." (Internal quotation marks omitted.) *Brucker*, 227 Ill. 2d at 515 (quoting Hayes, 136 Ill. 2d at 457-58). In *Hayes*, this court concluded that the legislative intent could be advanced only if the statute was read in such a way that it limited exposure to liability for injury or death arising out of patient care under all theories of liability. *Hayes*, 136 Ill. 2d at 459; see also *Brucker*, 227 Ill. 2d at 515-16.

The court in *Brucker* also contrasted section 13–212 with section 2–622 of the Code of Civil Procedure, which imposes various pleading requirements for "any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of *medical, hospital, or other healing art malpractice*." (Emphasis added.) 735 ILCS 5/2–622(a) (West 2006); *Brucker*, 227 Ill. 2d at 516-17. We noted that section 13–212 is broader than section 2–622, such that there are some actions to which section 13–212 applies but section 2–622 does not. As the court later explained, "all medical malpractice claims involve injuries arising out of patient care, but not all injuries arising out of patient care were by reason of medical malpractice." *Id.* at 516-17, 532. Therefore, the court did not consider the portions of the parties' arguments that debated whether the Bruckers' complaint alleged "malpractice." *Id.* at 518.

Having concluded that "arising out of patient care" is not synonymous with "medical malpractice," we looked to the plain and established meaning of "arising out of":

> "The phrase 'arising out of' has a set meaning in the law. In any context in which it is used, the phrase has been defined

broadly and refers to a causal connection. *Miller*'s definition of 'arising out of' as 'generally mean[ing] "originating from," "growing out of," or "flowing from" ' [citation] is consistent with definitions found in other authorities. Black's defines 'arise' as '[t]o originate; to stem (from)' or '[t]o result (from).' Black's Law Dictionary 115 (8th ed. 2004). Webster's defines 'arise' as 'to originate from a specified source.' Webster's Third New International Dictionary 117 (1993)." *Brucker*, 227 Ill. 2d at 521-22.

Because "arising out of" has a "set meaning in the law," we looked to how Illinois courts have construed that phrase in other contexts. Specifically, "[t]he phrase 'arising out of' is construed most often in workers' compensation proceedings." *Brucker*, 227 Ill. 2d at 521-22. The Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)) provides compensation for injuries "arising out of and in the course of" employment. 820 ILCS 301/2 (West 2006). We noted that, in that context:

> "The 'arising out of' component is primarily concerned with causal connection. To satisfy this requirement it must be shown that the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. [Citation.] Stated otherwise, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citations.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties." (Internal quotation marks omitted.) *Brucker*, 227 Ill. 2d at 522 (quoting *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203-04 (2003)).

Importantly, we noted that "arising out of" does not encompass mere "but for" causation under the Workers' Compensation Act. Thus, it is not sufficient to show only that an employee would not have been at the location of the injury but for his or her employment, nor is it sufficient to show only that the accident would not have

-12-

occurred but for the fact that the employment placed the claimant in the position "in which he was injured by a neutral (neither personal nor related to employment) force." *Brucker*, 227 Ill. 2d at 522-23 (citing *USF Holland, Inc. v. Industrial Comm'n*, 357 Ill. App. 3d 798, 803 (2005)).

We acknowledged that in some other contexts, "arising out of" has been linked with "but for" causation. However, we noted that those contexts had generally used "arising out of" in conjunction with "relating to" and "in connection with," such as in parts of the Pension Code (*e.g.*, 40 ILCS 5/5–227 (West 2006)), or they had involved insurance policies that must be construed broadly in favor of coverage (see, *e.g.*, *State Automobile Mutual Insurance Co. v. Kingsport Development, LLC*, 364 Ill. App. 3d 946, 953-54 (2006)). Turning back to section 13–212, the *Brucker* court rejected a definition of "arising out of" that equated to mere "but for" causation:

> "Considering the above authorities, we construe 'arising out of patient care' simply as requiring a causal connection between the patient's medical care and the injury. While the phrase does not need to be construed so broadly as to encompass 'but for' causation, it clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment. This court has been defining 'arising out of' as referring to cause or origin since at least 1917 (see *Eugene Dietzen Co. v. Industrial Board*, 279 Ill. 11, 15 (1917) [(a workers' compensation case)]), so we should presume that the legislature was well aware of the judicial construction of this phrase when it used it in section 13–212." *Brucker*, 227 Ill. 2d at 523-24.

Thus, in *Brucker*, this court adopted the same construction of "arising out of" that courts in Illinois have used in workers' compensation proceedings for over 90 years. Indeed, the majority emphasized its reliance on workers' compensation proceedings when it responded to the specially concurring justices' alternative approaches, noting:

> "The specially concurring justices offer no explanation for why we should not presume that the legislature intended 'arising out of' to have the same meaning always assigned to it. Moreover, in the workers' compensation context, this court

-13-

has for years been construing the phrase to refer to cause or origin while not encompassing 'but for' causation, so the specially concurring justices' assertions that this is an unworkable test are not well-taken." *Id*. at 524 n.4.

Turning to the facts in *Brucker*, we concluded that "there is no question" that the Bruckers alleged an injury arising out of patient care. In rejecting the argument that the connection was mere "but for" causation, the court opined, "Anna was not injured by some neutral force that had nothing to do with the care and treatment defendants provided to her. Rather, her injury was caused because she ingested the substance in the bottle that Dr. Mercola sold to her to treat a medical condition that Dr. Mercola had diagnosed." *Id.* at 524-25.

*Orlak v. Loyola University Health System*, 228 Ill. 2d 1 (2007), decided the same day as *Brucker*, is also instructive. There, the plaintiff's complaint included counts alleging constructive fraud, medical negligence, medical battery, and ordinary negligence. *Orlak*, 228 Ill. 2d at 4-6. The counts all stemmed from the alleged failure of the defendant hospital, Loyola University Health System, to timely inform the plaintiff that she may have contracted hepatitis C from a blood transfusion years earlier. According to the complaint, the plaintiff was treated by Loyola in 1989 following a work-related accident, and during her hospitalization she was given a blood transfusion. At the time, no definitive test existed to determine the presence of viral hepatitis in blood. In 1990, Loyola contacted the plaintiff and recommended that she be tested for human immunodeficiency virus (HIV). Plaintiff was tested, and the test results were negative for HIV. In 2000, the hospital again contacted the plaintiff and notified her that her blood donor had recently tested positive for the hepatitis C virus, and it urged her to be tested. The plaintiff tested positive for hepatitis C. *Id.*

In her ordinary negligence count, which was at issue before this court, the *Orlak* plaintiff claimed that Loyola knew or should have known by March 1997 that the plaintiff needed to be tested for hepatitis C. She alleged a continuing breach of duty for every day thereafter that the hospital failed to notify her. *Id*. at 5-6. Loyola argued that the plaintiff's complaint was barred in its entirety by section 13–212. The circuit court dismissed the complaint, and the plaintiff appealed, arguing that her ordinary negligence claim was not

"arising out of patient care." *Id*. at 6.

This court found that the ordinary negligence count did allege injuries "arising out of patient care," subject to the statute of repose in section 13–212. In doing so, we rejected the plaintiff's argument that "by using the phrase 'arising out of patient care,' the legislature intended the statute of repose to govern claims based on events that involve *actual patient care*." (Emphasis added.) *Id*. at 9. As we had done in *Brucker*, we noted in *Orlak* that the legislature intended "arising out of patient care" to encompass a "much broader range of claims" than simple medical malpractice. *Id*. at 12. We further noted:

> "It is clear that the legislature intended the statute of repose to operate in a very broad manner and it has been interpreted in that manner by courts addressing the issue. The question is not whether the plaintiff has alleged medical negligence or ordinary negligence. Rather, the sole issue is whether the plaintiff's claim arose from patient care." *Id*. at 14.

We also relied on *Brucker*'s definition of "arising out of patient care" as "simply requiring a causal connection between the patient's medical care and the injury," noting that it was not mere "but for" causation, but " 'clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment.' " *Id*. at 15 (quoting *Brucker*, 227 Ill. 2d at 523-24).

Applying this construction to the facts of *Orlak*, we acknowledged that the plaintiff's allegation of failure to notify did "not involve the provision of medical care." *Orlak*, 228 Ill. 2d at 16. "However," we held, "the omission itself cannot be viewed in a vacuum. Plaintiff's allegations of a duty to notify her and Loyola's alleged violation of that duty flows from the blood transfusion she received during her 1989 hospitalization. *** It is apparent here that there is a causal connection between plaintiff's 1989 hospitalization and blood transfusion and her current claim against Loyola." *Id*. at 16-17. We also reiterated that the purpose of the statute of repose in section 13–212 is to curtail "potentially open-ended liability for health-care providers" and "reduce the cost of medical malpractice insurance and to assure its continued availability to medical practitioners." *Id*. at 17. We noted, as we had in *Brucker*, that construing "arising out of patient care" narrowly would be contrary

-15-

to that purpose. *Id.*

Both *Brucker* and *Orlak* relied on three cases from our appellate court in reaching their conclusions, and those cases also inform my analysis. First, in *Miller v. Tobin*, 186 Ill. App. 3d 175 (1989), the plaintiff filed a claim alleging that a psychiatrist violated the Mental Health and Developmental Disabilities Confidentiality Act (now 740 ILCS 110/1 *et seq*. (West 2006)) when the psychiatrist revealed confidential information to the plaintiff's wife. *Miller*, 186 Ill. App. 3d at 176. The appellate court held that "arising out of" is "broad and generally means 'originating from,' 'growing out of,' or 'flowing from.' " *Id.* at 177. The court also noted that section 13–212 "is a general limitations section designed to apply to all cases against physicians arising out of patient care." *Id.* Thus, the court found that because the plaintiff and his wife had consulted the psychiatrist for medical issues, and because the disclosure occurred as part of the wife's treatment, section 13–212 applied to bar the claim. *Id.* at 178.

In *Walsh v. Barry-Harlem Corp.*, 272 Ill. App. 3d 418 (1995), the plaintiff brought a consumer fraud complaint, alleging that the doctor intentionally falsified test results and misrepresented that the plaintiff needed to have a cataract removed and a new lens implanted. *Walsh*, 272 Ill. App. 3d at 420-21. Although the count at issue did not include any injury caused by the actual surgery, the court nonetheless held that it was "arising out of patient care," noting that "the plaintiff's allegations of misconduct were inextricable from the defendants' diagnosis and treatment of his eyes." *Id.* at 425.

Finally, in *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939 (1998), the plaintiff sought damages for the death of her husband following surgery. Although her complaint contained several counts alleging medical malpractice, count V of the complaint alleged spoliation of evidence based on the hospital's destruction of certain records related to the incident. The trial court dismissed count V as time-barred under section 13–212(a), but the appellate court reversed, citing *Miller*. *Cammon*, 301 Ill. App. 3d at 950. This court in *Brucker* questioned *Cammon*'s analysis, which focused on the breach of duty alleged by the plaintiff rather than whether the complaint alleged an injury that originated from, grew out of, or flowed from her husband's care and treatment, but we opined, "[r]egardless of whether *Cammon*'s duty analysis was

-16-

appropriate, however, its conclusion was unquestionably correct. Destroying her husband's operative report after the fact was not part of the care and treatment that the doctor and hospital provided to the plaintiff's husband. The injury that the plaintiff suffered was to her ability to prove her lawsuit, and that injury did not arise out of patient care." *Brucker*, 227 Ill. 2d at 521.

*Brucker*, *Orlak*, and the appellate court cases cited therein make it clear that "arising out of patient care" is given broad effect in Illinois. Although it does not mean mere "but for" causation, it is not limited to allegations that a medical practitioner breached a medical standard of care, nor is it limited to injuries caused directly by the treatment of a patient. Thus, injuries caused by the mistake of a non-medically-trained assistant in selling nutritional supplements (as in *Brucker*), by the failure of a hospital to notify a former patient of the need for testing (as in *Orlak*), by the disclosure of confidential information during the treatment of another patient (as in *Miller*), or by the deliberate falsification of test results (as in *Walsh*) have all been deemed to be "arising out of patient care." As we have stated, the standard incorporates "any injuries that have their origin in, or are incidental to, a patient's medical care and treatment." *Orlak*, 228 Ill. 2d at 15; *Brucker*, 227 Ill. 2d at 523-24.

Although the majority acknowledges our broad interpretation of "arising out of patient care," it nonetheless concludes that plaintiff's injuries in this case do not arise out of patient care because "Kaufmann's injury arose out of Dr. Schroeder's sexual assault and not any medical care she received from him." Slip op. at 7. This conclusion overlooks the fact that the alleged sexual assault undoubtedly had its "origin in" or was "incidental to" Schroeder's medical care and treatment of plaintiff. Schroeder was Kaufmann's obstetrician-gynecologist, whom Kaufmann consulted during her pregnancy. As part of her care and treatment, Kaufmann was hospitalized, and during her hospitalization, she was treated by Schroeder. According to her complaint, Schroeder sedated plaintiff "during an unnecessary exam and/or procedure which did not require sedation." It was only then, while plaintiff was hospitalized and sedated, that the alleged sexual assault occurred, perpetrated by the doctor who performed the allegedly unnecessary exam.

Critically, Kaufmann was not injured by a doctor or patient who

simply happened across her during her hospitalization. She was not the victim of a random criminal attack that coincidentally occurred while she was at the hospital. This is not a case of mere "but for" causation. If, as the concurring justices suggest, the only connection between her patient care and her injury was that " 'but for' being in the hospital for the treatment, she would not have been in the place where the alleged assault occurred," I would agree that her injuries were not arising out of patient care. But that is not the case before us. According to Kaufmann's complaint, Schroeder consulted with Kaufmann as part of Kaufmann's patient care. He diagnosed a urinary problem as part of her patient care. He hospitalized her as part of her patient care. He informed her that an examination was necessary as part of her patient care, and he sedated her under the guise of her patient care. The whole of Schroeder's control over plaintiff and his ability to commit the allegedly deviant sexual acts were a direct result of his actual and pretextual treatment of her, and her injuries flowing from those acts are injuries "arising out of patient care."

The majority notes that "[t]he sexual assault, itself, was not medical care, nor was there even any pretense that Dr. Schroeder's sexual acts were necessitated by, or in any way related to, the medical care he was providing to Kaufmann." Slip op. at 7. However, as we held in *Orlak*, the acts or omissions alleged to have caused the injury "cannot be viewed in a vacuum" (*Orlak*, 228 Ill. 2d at 16-17), and we have consistently rejected such a narrow view of a plaintiff's complaint. In *Brucker*, we rejected the plaintiff's argument that the mislabeling of nutritional supplements for sale was not patient care, holding that the plaintiff was injured because she accepted a prescription from Dr. Mercola as part of her treatment and she followed his instructions with regard to that prescription. In *Orlak*, we rejected the plaintiff's argument that a violation, eight years after her treatment had ended, of an ongoing administrative duty to notify her was not "arising out of patient care," holding that the duty to notify arose only because she had earlier received a blood transfusion as part of her treatment. In *Walsh*, which we endorsed in both *Brucker* and *Orlak*, the court rejected the plaintiff's argument that the falsification of test results perpetrated to justify the performance and billing of a medically unnecessary procedure was not "arising out of patient

-18-

care," holding that because the plaintiff had consulted the defendants for eyecare, the fraud was "inextricable" from his care and treatment.

In each of these cases, this court refused to narrow its analysis of the plaintiffs' claims to include only the particular act or omission alleged to have caused the injury, instead examining the totality of the circumstances leading to the injury to determine whether it had its "origin in" or was "incidental to" the patient's care and treatment. Yet in this case, the majority simply concludes that "[t]he sexual assault, itself, was not medical care." If this alone is enough to remove an injury from the statute of repose in section 13–212, *Brucker* should be reversed because the labeling and sale of nutritional supplements, itself, was not medical care. Under the rule as the majority today applies it, *Orlak*, *Miller*, and *Walsh* are all likewise of questionable continuing validity.

Finally, I note that even if I agreed with the majority's conclusion that the sexual assault of Kaufmann can be divorced from its circumstances and was not incidental to her treatment, several of plaintiff's counts against Jersey Community Hospital should nonetheless be considered "arising out of patient care." In her amended complaint, plaintiff seeks damages not only for the battery, but for vicarious liability for the unnecessary sedation, unnecessary medication, unnecessary exam or procedure, and lack of informed consent for that procedure that she alleges preceded the battery. Even under the majority's narrow view of "arising out of patient care," these acts, unlike sexual assault, are all "medical care" in and of themselves. However, the majority dismisses plaintiff's argument on these points, opining that "the harm resulted from the sexual assault," and the unnecessary medical treatment was "simply a means by which Schroeder was able to accomplish his sexual assault on Kaufmann." Slip op. at 6-7. According to the majority, then, it is the motives of the physician that determine whether the acts are "arising out of patient care." Under such a rule, the same intentional acts alleged by the same plaintiff under the same circumstances may have different results depending on the mental state of the actor. The problems with this approach are manifest. For example, taken together with *Walsh*, this conclusion means that if Schroeder had performed the unnecessary procedure so that he could illegally bill Kaufmann for the service, as was the allegation in *Walsh*, then his acts would be

"arising out of patient care," but because he allegedly performed them so that he could assault her, they are not.

In summary, the majority's holding in this case represents a striking and inexplicable departure from our established precedents in *Brucker* and *Orlak*, as well as those of the appellate court. By focusing exclusively on the particular mechanism of the injury, something we have consistently refused to do, the majority reaches a result that contravenes the legislative intent that section 13–212 be construed broadly, an intent we have repeatedly reaffirmed. Where, as here, the plaintiff's injury occurred during the course of treatment and at the hands of the doctor performing that treatment, I would hold that it was "arising out of patient care." For these reasons, I respectfully dissent.

CHIEF JUSTICE KILBRIDE joins in this dissent.